**WAYNE DUDDLESTEN,
INC., Appellant,**

v.

**HIGHLAND INSURANCE CO., for Itself and as Assignee of Claims of Aberdeen Insurance Co.; and Aberdeen Insurance Co., Appellees.**

**No. 01–02–00441–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 10, 2003.

Bogdan Rentea, Austin, for appellant.

Robert A. Shults, Brice Barret Beale, Preston & Cowan, LLP, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, Wayne Duddlesten Inc. (Duddlesten), sued appellees, Highlands Insurance Co. (Highlands), and Aberdeen Insurance Company (Aberdeen), for violations of article 21.21 of the Texas Insurance Code, negligence, violations of the Deceptive Trade Practices Act, fraudulent inducement, breach of fiduciary duty, breach of the duty of good faith and fair dealing, breach of contract, and for a declaratory judgment. Highlands counterclaimed for breach of contract, reformation, fraud in the inducement, breach of express warranty, estoppel, declaratory judgment, and bad faith DTPA and insurance code claims.

The trial court granted summary judgment against appellant on its breach of contract, DTPA, and insurance code claims, granted appellees' motion for judgment on the pleadings as to appellant's breach of fiduciary duty claim, and granted appellees' special exception to appellant's negligence claim. The trial court granted summary judgment for appellant as to appellees' fraud in the inducement, breach of express warranty, and estoppel claims.

The case proceeded to a non-jury trial solely on appellees' counterclaims for breach of contract, reformation, declaratory judgment, and bad faith DTPA and insurance code claims. The trial court ordered that appellant take nothing, and that Highlands should have judgment for breach of contract, attorney's fees, prejudgment interest, post-judgment interest, and costs. The trial court awarded to Highlands $336,941.59 in actual damages, $47,635.10 in pre-judgment interest, and $131,550.25 in attorney's fees.

In three issues, which we will separate into six issues in this opinion, appellant argues that the trial court erred in (1) granting summary judgment for appellee on appellant's breach of contract claim; (2) granting summary judgment for appellee on appellant's DTPA and insurance code claims; (3) ruling against appellant on its affirmative defense that the premium payment agreement was invalid; (4) ruling against appellant on its affirmative defense that the Aberdeen policies were not valid retroactive insurance policies; (5) granting appellees' special exception on appellant's breach of fiduciary duty claim; and (6) granting appellees' special exception to appellant's negligence claim.

We affirm.

### Facts

In 1991, appellant obtained worker's compensation insurance through Highlands, with the policy in effect from July 1, 1991, to July 1, 1992 (policy one). The next two years, appellant obtained two insurance policies from Aberdeen, a subsidiary of Highlands, with the policies in effect from July 1, 1992, to July 1, 1993 (policy two), and July 1, 1993, to July 1, 1994 (policy three), respectively.

Highlands issued the first of the three insurance policies at issue in this case. As

part of policy one, appellant signed and agreed to a retrospective premium payment plan, which was labeled as a "three year plan." Under the retrospective premium payment plan, a standard annual premium amount would be adjusted according to factors based on the amounts that Highlands had to pay on claims made under the policy. Highlands timely filed the required notice of election with the State Board of Insurance and indicated on the notice of election form that the retrospective rating plan was for a term of three years. The notice of election form also indicated that the retrospective rating plan would apply to policy one, but there was no reference to any other policies. Policies two and three, issued by Aberdeen, incorporated the premium payment plan from policy one by reference. None of the applications for the three policies indicated that there would be a retrospective premium payment plan in effect.

On March 27, 2000, appellant sued Highlands for inappropriately settling and paying several claims that had been asserted against appellant by appellant's employees. Appellant later amended its petition to add Aberdeen as an additional defendant in the suit.

## Summary Judgment

In its first issue, appellant argues that the trial court erred in granting summary judgment for appellee on appellant's breach of contract claim, and in granting appellee's no-evidence motion for summary judgment on appellant's DTPA and insurance code claim.

### Standard of Review

The standards for reviewing a motion for summary judgment are as follows: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law;

(2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant is entitled to summary judgment if at least one element of each of the plaintiff's causes of action is negated as a matter of law. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex.1995). A defendant may also prevail on a motion for summary judgment by conclusively proving all elements of an affirmative defense as a matter of law, such that there is no genuine issue of material fact. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995) (per curiam).

A no-evidence motion for summary judgment is proper when there is a complete absence of evidence of a vital fact, or the evidence offered to prove a vital fact is no more than a scintilla, or the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

### Breach of Contract

■ Appellant claims that appellees breached the provisions of the insurance policies that required appellees to properly investigate and adjust the claims. Appellees argue that, under Texas law, there is no cause of action for the negligent handling of claims, and there is no language in the policy that gives appellant the right to have specific input into the decision to settle, or to override appellee's right to settle.

The policy states in relevant part that:

B.  WE WILL PAY

We will pay promptly when due the benefits required of you by the Worker's Compensation law.

C. WE WILL DEFEND

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Appellant does not argue that appellees failed to defend it from any suits or claims against it, but rather, appellees did not properly investigate and adjust the claims according to its duties under the policy. We will determine appellee's contractual duties by looking at language of the policy itself. *Kelley–Coppedge Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998).

Appellant relies on section B, above, to impose a duty on appellees to pay only those claims against appellant that are valid, relying on the language, "will pay . . . benefits required of you by the Worker's Compensation law." Appellant also relies upon the last sentence of section C, which states that appellees have no duty to defend a claim or proceed in a suit that is not covered by the insurance policy. Appellant claims that this term was violated when appellees settled claims that should not have been covered by the policy.

We do not agree with appellant's interpretation of the policy. Section B states that appellees will pay, when due, the benefits required. Section C gives appellees the right to investigate and settle all claims, proceedings, or suits. The actions taken by appellees pursuant to section C will determine if appellees are required to pay the benefits discussed in section B. If appellees exercise their rights under the policy in section C to settle a claim, then payment will be required of appellees under section B. There is .no requirement in the policy that appellees obtain the consent of appellant when settling a claim or investigating the merits of a claim, and we are not permitted to write such a clause into the policy. *Dear v. Scottsdale Ins. Co.,* 947 S.W.2d 908, 913–14 (Tex.App.-Dallas 1997, pet. denied) (holding that when policy gives absolute right to settle third-party claims, courts are not permitted to "engraft any consent requirement onto [the] policy"), *overruled on other grounds by Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 122–23 (Tex.2001).

We will discuss later in this opinion whether appellees have extra-contractual duties that require them to use prudence in investigating and settling claims, but we hold that, because the policy gives appellees the "right to . . . settle these claims, proceedings or suits," appellees' discretion in investigating and settling claims is not contractually limited. Accordingly, we hold that the trial court did not err in granting summary judgment for appellees on appellant's breach of contract claim.

We overrule issue one.

### Claims under the DTPA and Insurance Code

The trial court granted appellee's no-evidence motion for summary judgment on appellant's DTPA and insurance code claims on the basis that there was no evidence of any misrepresentation made by appellees, and no evidence that appellees caused appellant to suffer damages.

Appellant's insurance code claims are based upon sections 4(1), 4(2), and 4(10)(a)(iv) of article 21.21. Tex. Ins.Code Ann. art. 21.21, § 4 (Vernon Supp.2003). Appellant argues that appellees violated section 4(1) by misrepresenting the terms of the policy, violated section 4(2) by knowingly making misrepresentations that only

legitimate claims would be paid, and violated section 4(10)(a)(iv) by knowingly failing to provide appellant with a reasonable explanation of the basis for appellees' decisions to compromise settlements of claims at issue. Generally, claims under section 4(1) and 4(2) are based upon insurance carrier's misrepresentations, and distribution of false information, respectively. TEX. INS.CODE ANN. art. 21.21, § 4(1), (2). Section 4(10)(a)(iv) provides that a deceptive act includes "failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim." TEX. INS.CODE ANN. art. 21.21, § 4(10)(a)(iv).

Appellant's DTPA claim is based upon appellees' alleged misrepresentations about the standard and quality of insurance services that were to be provided, misrepresentations about the rights and remedies that the policies conferred, and appellees' failure to disclose information concerning the services and benefits offered. TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon 2002). Generally, claims may be made under section 17.46(b)(5) for misrepresentations regarding characteristics of goods or services, under section 17.46(b)(7) for misrepresentations as to the quality of goods or services, and under 17.46(b)(24) for failing to disclose information about goods or services if the failure to disclose was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. TEX. BUS. & COM.CODE ANN. § 17.46(b).

Appellees' motion for summary judgment was a traditional as well as a no-evidence motion. Appellees contended that there was no evidence of misrepresentations, and that the testimony of Wayne Duddlesten, in his deposition, conclusively established that appellant could not prevail on his claims under the DTPA and insurance code. In Duddlesten's deposition, the following dialogue took place:

Attorney: Let me approach it this way. Is it fair to say, Mr. Duddlesten, that you don't have personal knowledge and you're not aware of anyone at your company who has personal knowledge that either Highlands Insurance Company or Aberdeen represented that their insurance services and benefits were of a particular standard and quality, although they were not?

Duddlesten: No, I have no personal knowledge of that.

Attorney: And you're not aware of anyone at your company?

Duddlesten: No, I'm not.

Attorney: And the second thing that's on page 6, it says that defendants represented that the insurance policies conferred and/or involved rights, remedies, and obligations on the part of defendants, which they now claim they did not. You're not aware of anyone personally or at your company who has knowledge about any of those alleged representations, correct?

Duddlesten: No. It's the same answer as before.

Duddlesten went on to testify that he had no personal knowledge of any actions taken by Highlands or Aberdeen in which those two companies failed to disclose information about their goods or services. Duddlesten also testified that the sole basis for his opinion that misrepresentations had been made was from conversations that he had with his internal staff.

■ Appellant claims that, despite Duddlesten's testimony, appellant produced ev-

idence of misrepresentations of appellees. As evidence of misrepresentations, appellant submitted its first and second supplemental responses to Aberdeen's first set of interrogatories; a letter from an independent insurance agent, Jerry Sims, which stated that Sims believed that the appellees' adjustment calculations were correct; the affidavit of appellant's expert, Paul Dutcher; and the affidavit of another of appellant's experts, Warren Petersen.

Appellant indicated in its answers to Aberdeen's interrogatories that, in essence, appellees impliedly represented that all claims paid were due under the policy, because the policy indicated that only valid claims would be paid. We have already held, as a matter of law, that appellees' right to settle claims under the policy is not contractually limited. Further, the alleged implied misrepresentations of appellees stem from an alleged failure to comply with the terms of a contract. Such actions may provide the basis for a breach of contract claim (which we have already discussed), but the same conduct cannot be used to support an action under the DTPA or the insurance code. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (where alleged misrepresentations resulted from failure to perform under contract, such alleged misrepresentations were not deceptive acts under the DTPA). Accordingly, appellant's answers to appellee Aberdeen's interrogatories are not evidence of a misrepresentation under the DTPA or insurance code.

■ Appellant's reliance on the letter of Sims, an independent insurance agent, is based upon the premise that representations made by Sims can be imputed to appellees. Sims stated in his letter to appellant that appellees' adjustment calculations were correct. Appellant claims that article 21.04 of the Insurance Code deems Sims an agent of appellees, which

would allow appellant to use Sims's letter as evidence of appellees' misrepresentations. *See* TEX. INS.CODE ANN. art. 21.04 (Vernon Supp.2003). Article 21.04 states the following:

> Any person who solicits an application for life, accident, or health insurance, or property or casualty insurance, shall, in any controversy between the insured or the insured's beneficiary and the company issuing any policy upon such application or between the insured or the insured's dependents and that company, be regarded as the agent of the company, and not the agent of the insured....

TEX. INS.CODE ANN. art. 21.04.

■ By its own language, article 21.04 applies only to life, accident, health, property, or casualty insurance. TEX. INS.CODE ANN. art. 21.04; *see generally Guthrie v. Republic Nat. Life Ins. Co.*, 682 S.W.2d 634, 637 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e) (holding that when the type of insurance procured is not listed in article 21.04, the article does not apply). In this case, appellant purchased worker's compensation insurance, which is not listed in article 21.04. Our query, then, is whether Sims had actual or apparent authority to bind appellees with his alleged misrepresentations. *Guthrie,* 682 S.W.2d at 637. Apparent authority in this case is determined by the acts of the insurer. *Id.* Apparent authority exists when the insurer affirmatively holds an agent out as possessing the authority, or the insurer knowingly and voluntarily permits the agent to act in an unauthorized manner. *Id.* It is undisputed that Sims was an independent insurance agent who was requested by appellant to check appellees' adjustment calculations. Appellant has shown no evidence that Sims was acting at the direction of appellees, or that appellees held out Sims as one with authority to speak for appellees with regard to the calculation of

the adjustments made. Accordingly, Sims's letter to appellant cannot be used as evidence of appellees' misrepresentations.

■ The affidavits of Dutcher and Petersen are also relied upon by appellant as evidence of appellees' alleged misrepresentations. Dutcher stated in his affidavit that certain claims were paid by appellee for which appellant should not have been responsible. Petersen stated in his affidavit that appellees incorrectly calculated the premium charged to appellants. While both of those affidavits lend themselves to appellant's theory that some claims were paid for which appellant should not have been responsible, they are not evidence of misrepresentations by appellees. *See Crawford,* 917 S.W.2d at 14 (evidence of breach of contract, without more, is not evidence of actionable misrepresentation under DTPA). Accordingly, we hold that the affidavits of Dutcher and Petersen are not evidence of appellees' alleged misrepresentations.

Upon our review of the record, we hold that appellant produced no evidence of a deceptive act or misrepresentation to support its claims under the DTPA and insurance code. Accordingly, the trial court did not err in granting summary judgment for appellees on appellant's DTPA and insurance code claims.

We overrule issue two.

### Validity of Premium Payment Agreement

■ In its third issue, appellant argues that the trial court erred when it ruled against appellant's affirmative defense that the agreement to pay premiums was void and unenforceable under article 5.57 of the Texas Insurance Code because there was no evidence, or insufficient evidence, to support such a ruling. *See* TEX. INS.CODE ANN. art. 5.57 (Vernon 1981). Appellant contends that the agreements to pay premiums were void because, although the retrospective premium payment plan was included in the policies, it was not sufficiently identified in the applications for the policies.

■ In a no-evidence, legal sufficiency review, we must consider only the evidence and inferences from evidence that supports the trial court's findings and must disregard all evidence and inferences to the contrary. *Heldenfels Bros. Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). In a factual insufficiency review, we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Article 5.57 provides the following:

The Board shall prescribe a uniform policy for workmen's compensation insurance and no company or association shall thereafter use any other form in writing workmen's compensation insurance in this State, provided that any company or association may use any form of endorsement appropriate to its plan of operation, if such endorsement shall be first submitted to and approved by the Board, and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this sub-chapter, and shall be sufficient cause for revocation of license to write workmen's compensation insurance within this State.

TEX. INS.CODE ANN. art. 5.57 (Vernon 1981). Appellant does not argue that it did not have notice of the terms of the premium payment plan, or that the plan does not comply with the State Board of Insurance; rather, appellant is arguing that because the premium payment plan in the policy

was not identified as a retrospective plan in the application, the agreement to pay premiums is null and void under article 5.57.

In construing the meaning of the article, we must ascertain and give effect to the legislature's intent. *Fleming Foods v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999). The intent of the legislature should be determined by reading the language of the provision, and construing the statute in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex.1998). If there are two reasonable interpretations of a statute and one would lead to an absurd result and the other would not, then we must choose the reasonable interpretation that avoids an absurd result. *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n. 5 (Tex. 1994).

■■■ The purpose of article 5.57 is to keep the amount of premiums to be paid from the field of bargaining. *Associated Emp. Lloyds v. Dillingham*, 262 S.W.2d 544, 546 (Tex.Civ.App.-Fort Worth 1953, writ ref'd). Side agreements that do not comply with the regulations of the State Board of Insurance are invalid and ineffective. *See Brookshire Grocery Co. v. Bomer*, 959 S.W.2d 673, 676 (Tex.App.-Austin 1997, pet. denied).

In this case, the applications for insurance provided a breakdown of the classification of employees, the estimated premiums that would result, and the estimated annual amount of premiums that would be paid. The more detailed retrospective premium payment plans were detailed in the policies, and there is no dispute that the premium payment plans comply with the regulations of the State Board of Insurance. Appellant directs us to no authority to suggest that every term of a premium payment plan must be included in the application for insurance, and, after considering article 5.57 as a whole, as well as the purpose of the article, we believe that an interpretation of the article that would require every term and detail of the premium payment plan to be included in the application of insurance would lead to an absurd result.

Further, the purpose of the article, which is to prevent unauthorized side agreements, is not thwarted here, where the retrospective premium payment plans that were approved by the Texas State Board of Insurance were included in the insurance polices. Accordingly, because the details of the retrospective premium payment plans in this case were included in the policy, we are unwilling to hold, on these facts, that the premium payment plans were "side agreements" in violation of article 5.57.

We overrule issue three.

## Notice of Election

■■■ In its fourth issue, appellant argues that the insurance policies that it purchased were void and unenforceable because there was no evidence, or alternatively, insufficient evidence, that appellees filed a notice of election as required by the Texas Retrospective Ratings Plan Manual.

The Texas Retrospective Ratings Plan Manual, and the notice of election form, provide that the retrospective rating plan is not available unless the Texas State Board of Insurance receives the completed form within sixty (60) days after the plan becomes effective in Texas. Texas Retrospective Plan Manual, Part Three, (I)(B)(1) (effective November 1, 1988).

Highlands issued the first of the three insurance policies at issue in this case. As part of policy one, which was to be in effect for one year, appellant signed and agreed to the retrospective premium endorsement, which was labeled as a "three

year plan." Highlands timely filed a notice of election with the State Board of Insurance and indicated on the notice of election form that the retrospective rating plan was for a term of three years. Highlands also indicated that the retrospective rating plan would apply to policy one, but there was no reference to any other policies. The subsequent two policies that were issued by Aberdeen stated that, "the premium for this policy will be determined by the retrospective premium endorsement forming a part of [policy one]," and also identified the applicable year of the three-year premium payment plan of which the policy was part.

Appellant cites *Brookshire v. Bomer* for the proposition that, because the notice of election in this case was not filed after each of the three policies were issued, the appellees did not make proper election filings, and, thus, policies two and three are void and unenforceable. 959 S.W.2d at 675. We are not persuaded by appellant's argument. In *Brookshire,* the parties made a side agreement to amend the original retroactive premium endorsement plan. *Id.* The court held that it was undisputed that the required filings reflecting the changes to the premium factors in the side agreement were not made pursuant to the rules and regulations of the State Board of Insurance, and that the side agreement was illegal and void. *Id.* at 677–78. In this case, there was no side agreement between appellant and appellees. The notice of election form filed by Highlands, on its face, contemplated that the retrospective premium payment plan would cover appellant's worker's compensation insurance for a term of three years. The description of the retrospective premium payment plan in policy one indicated that the plan would be for a term of three years. The subsequent two polices that were issued referred to, and incorporated, the three year retrospective premium pay-

ment plan. Accordingly, because there was no side agreement in this case, the holding of *Brookshire* does not apply.

Our review of the evidence indicates that the notice of election form, as well as all three insurance policies, showed that the retrospective premium payment plan would be in effect for three years. Accordingly, we hold that there was some evidence that the trial court could have relied upon to determine that appellees were in satisfactory compliance with the Texas Retrospective Ratings Plan Manual in its filing of the notice of election. We further hold that, based upon the same evidence, the trial court's judgment was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule issue four.

### Breach of Fiduciary Duty

In its fifth issue, appellant argues that the trial court erred in granting appellees' motion for judgment on the pleadings with regard to appellant's breach of fiduciary duty claim. The trial court had previously granted appellees' special exception to appellant's breach of fiduciary duty claim, but permitted appellant to amend its petition in response to appellees' special exception. In appellant's third and last original petition, appellant alleged that a fiduciary relationship existed between appellant and appellees because their relationship was one of trust and confidence. Appellant alleges that it trusted in and relied on appellees to correctly administer its worker's compensation claims, but that appellees betrayed that trust.

Summary judgment on the pleadings is proper where plaintiff's allegations cannot constitute a cause of action as a matter of law. *See Peek v. Equip. Serv. Co.,* 779 S.W.2d 802, 805 (Tex.1989); *Mar-*

*anatha Temple v. Enterprise Prod.*, 893 S.W.2d 92, 98 (Tex.App.-Houston 1994, writ denied). Accordingly, we will review the pleadings to determine if appellant alleged facts to support a cause of action for breach of fiduciary duty.

A fiduciary duty is an extraordinary duty that is not lightly created. *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 301 (Tex.App.-El Paso 1996), *aff'd on other grounds*, 966 S.W.2d 482 (Tex.1998); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex. App.-Dallas 1989, no writ). Fiduciary relationships can be created by formal, or technical relationships, such as attorney-client relationships, or from informal relationships where the existence of confidence and trust imposes greater duties as a matter of law. *Garrison*, 927 S.W.2d at 301; *Lovell v. Western Nat. Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex.App.-Amarillo 1988, writ denied). Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship. *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex.App.-Dallas 1990, writ denied). There is no general fiduciary duty between an insurer and its insured. *Garrison*, 927 S.W.2d at 301; *Caserotti*, 791 S.W.2d at 565. To impose an informal fiduciary relationship in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. *R.R. Street & Co., Inc. v. Pilgrim Enter., Inc.*, 81 S.W.3d 276, 305 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Appellant has not directed us to, and we are not aware of any Texas case that has found a fiduciary relationship between an insured and its insurer.

It is undisputed that appellant and appellees are businesses, and that their relationship was based on appellant's purchase of worker's compensation insurance. Appellant alleged that a relationship of trust existed between appellant and appellees, stating that appellant trusted appellees to correctly administer its worker's compensation claims, and that appellees were trusted to perform various services commonly performed by insurers, but it has not alleged facts, even after being allowed time to re-plead, that demonstrate that an informal, confidential relationship existed between the parties that was formed prior to and apart from the insurance contracts. *See R.R. Street & Co.*, 81 S.W.3d at 305. Accordingly, we hold that, under these facts, the trial court did not err in granting appellees' motion for judgment on the pleadings as to appellant's claim of breach of fiduciary duty.

We overrule issue five.

### Negligence

In its sixth issue, appellant argues that the trial court erred in granting appellees' special exception as to appellant's claim for negligent mishandling and settlement of claims. The trial court granted appellees' special exception to appellant's negligence claim, and it later struck the negligence claim when it determined that appellant's negligence claim in its third original petition was not different than the previous ones. Appellees contend that no such cause of action exists in Texas.

We will review the trial court's ruling on a special exception for an abuse of discretion. *Muecke v. Hallstead*, 25 S.W.3d 221, 224 (Tex.App.-San Antonio 2000, no pet.). The propriety of the dismissal will be judged on the pleadings, not on evidence. *Holt v. Reproductive Servs. Inc.*, 946 S.W.2d 602, 604 (Tex.App.-Corpus Christi 1997, writ denied). If the

plaintiff's suit is not permitted by law, the defendant may file special exceptions and a motion to dismiss. *See e.g. Trevino v. Ortega*, 969 S.W.2d 950, 951 (Tex.1998); *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998).

Appellant is not alleging in this case a traditional *Stowers* claim in that appellees negligently failed to settle a claim where there was an offer of settlement within policy limits. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved). Rather, appellant is arguing that appellees negligently settled and paid invalid worker's compensation claims that had been asserted against appellant. Appellant contends that, because appellees would be reimbursed by appellant pursuant to the retrospective premium payment plan, appellees had less of an incentive to dispute invalid claims that were asserted, and were, in fact, negligent in settling several of the claims asserted against appellant.

Appellant cites *Ranger County Mut. Ins. Co. v. Guin* for the proposition that the Texas Supreme Court has expanded the duty stated in *Stowers* to cover appellant's claim for negligent handling of claims. 723 S.W.2d 656, 659 (Tex.1987). The court in *Ranger* stated that an insurer's duty to the insured "extends to the full range of the agency relationship," and includes the investigation and the preparation of the defense of the lawsuit. *Id.* Since the *Ranger* decision, however, the Texas Supreme Court has limited the broad language used in *Ranger*. In *American Physicians Ins. Exch. v. Garcia*, the court referred to the *Ranger* court's language about the duty of an insurer as "dictum." 876 S.W.2d 842, 849 (Tex.1994). The court also noted that, in the context of a *Stowers* lawsuit, with regard to an insurer's duties discussed in *Ranger*, "evidence

concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it." *Id.* Further, unlike the case in *Ranger*, there is no allegation in this case that there was negligence in failure to settle within policy limits. Rather, appellant's claim is that appellees' negligence was in going forward with the settlement of claims.

We are not aware of any authority from the Texas Supreme Court that expressly permits plaintiffs to sue insurers, outside of the scope of *Stowers*, for the negligent handling of claims. In *Maryland Ins. Co. v. Head Indus. Coatings and Serv., Inc.* the Texas Supreme Court, when asked to recognize a duty of good faith and fair dealing between the insurance carrier and the insured, stated that "Texas law recognizes only one tort duty in this context, that being the duty stated in *Stowers* . . . ." 938 S.W.2d 27, 28 (Tex.1996). A recent Fifth Circuit decision has also noted that, with regard to third-party insurance claims, *Stowers* provides the only common law tort duty in Texas in that setting. *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 832 (5th Cir.2000). We are unwilling to expand the scope of an insurer's duties to the insured without express language from the Texas Supreme Court authorizing us to do so. Accordingly, we hold that the trial court did not err in granting appellees' special exception to appellant's claim for negligent handling of claims.

We overrule issue six.

### Conclusion

We affirm the trial court's judgment.