**E.R. DUPUIS CONCRETE CO., Appellant,**

v.

**PENN MUTUAL LIFE INSURANCE COMPANY, The Fort Worth Agency of Penn Mutual Life Insurance Company, Hornor, Townsend & Kent, Inc., Luther B. Lewis, and Morris E. Robertson, Appellees.**

No. 09–03–368 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 24, 2004.

Decided May 6, 2004.

**314**

Bruce M. Partain, Nancy Y. Hart, Wells, Peyton, Greenberg & Hunt, LLP, Beaumont, for appellant.

Craig S. Wolcott, Ruth E. Piller, Hays, McConn, Rice & Pickering, Houston, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This appeal from the granting of a summary judgment concerns litigation over the purchase by the appellant, E.R. Dupuis Concrete Co. ("Dupuis Concrete"), of a Penn Mutual Life Insurance Company ("Penn Mutual") variable life insurance policy on the life of its president, Elwood R. Dupuis. In addition to suing the company that issued the policy, Dupuis Concrete sued two individuals, Luther B. Lewis and Morris E. Robertson, Jr., who sold the policy to Dupuis Concrete, and two other parties, The Fort Worth Agency of Penn Mutual Life Insurance Company, and Hornor, Townsend & Kent, Inc., who along with Penn Mutual were alleged to be liable for the acts of their agents. We affirm.

Dupuis Concrete alleged that the defendants induced it to purchase the policy through basic estate planning for Elwood R. Dupuis. In its petition, Dupuis Concrete alleged that Robertson and Lewis used information gathered during meetings for estate planning to sell the life insurance, then falsely represented that

the plaintiff could expect a 10%–24% return on its investment. According to the petition, Penn Mutual invested Dupuis Concrete's money in risky funds without consulting the plaintiff or its officer or informing them of the risks. The petition states that the defendants falsely represented to the plaintiff that the profits from the investments would cover the premiums for the life insurance policy. Although Dupuis Concrete invested $221,000, when suit commenced the investment was alleged to be worth only $28,000.

Dupuis Concrete alleged various tort and contract causes of action, as follows: (1) deceptive trade practices and insurance code violations; (2) common law fraud; (3) breach of fiduciary duty; (4) negligence, including (a) negligence per se, (b) negligent misrepresentation, and (c) negligent hiring, supervision or management; (5) breach of contract; (6) breach of implied covenant of good faith and fair dealing; (7) conversion; and (8) unjust enrichment. The defendants jointly filed an answer and counterclaim, which alleged bad faith filing of the suit, then jointly filed original and supplemental motions for summary judgment. The defendants contended that Dupuis Concrete's claims for misrepresentation, deceptive trade practices, negligent misrepresentation and fraud were barred as a matter of law because Elwood Dupuis admitted in his deposition that he did not read the policy, and the first page of the policy contained the following disclosures:

THE DEATH BENEFIT AND DURATION OF COVERAGE MAY INCREASE OR DECREASE DEPENDING ON THE INVESTMENT EXPERIENCE OF THE SEPARATE ACCOUNT. THE DEATH BENEFIT WILL NEVER BE LESS THAN THE SPECIFIED AMOUNT SHOWN ON PAGE 3. THE POLICY'S ACCUMULATION VALUE IN THE SEPARATE ACCOUNT MAY INCREASE OR DECREASE DEPENDING ON THE INVESTMENT EXPERIENCE OF THAT ACCOUNT. THE POLICY VALUE IS NOT GUARANTEED.

Notice—The value of the funds allocated to the subaccounts of the Separate Account is not covered by an insurance guaranty fund or other solvency protection arrangement because the risk for these funds is borne by the Owner.

Free Look Period—This policy may be cancelled by returning it within 10 days after it is received by the owner. It must be returned to Penn Mutual or to the agent through whom it was purchased. This policy will then be considered void as of its inception. The Policy Value, premium charge and the monthly deductions will be refunded.

READ YOUR POLICY CAREFULLY. This policy is a legal contract between the Owner and Penn Mutual.

According to the defendants, Dupuis Concrete's causes of action for Insurance Code violations, Business and Commerce Code violations, negligent misrepresentation, breach of covenant of good faith and fair dealing, and conversion, were all dependant upon claims of misrepresentations and fraudulent conduct not sustainable given the policy language that disclosed the true facts and described the risks involved. The motion also asserted that the negligence per se claim, being based upon a statutory deceptive trade or deceptive insurance practice claim, would not support a common-law theory of strict liability outside the statutes in question. In the insurance context, the motion alleged, the duty of good faith applied to processing and paying claims, not formation of the contract, thus precluding the alleged cause of action for breach of an implied covenant of good faith and fair dealing. Because un-

just enrichment is not applicable where a contract exists, the motion for summary judgment urged that claim was barred. The motion for summary judgment asserted that there was no fiduciary relationship between the parties, who were insurer and insured. The defendants also presented a no-evidence motion for summary judgment on Dupuis Concrete's causes of action for negligence, breach of contract, breach of fiduciary duty, and breach of implied covenant of good faith and fair dealing. TEX.R. CIV. P. 166a(i). The trial court granted the motion for summary judgment and ordered that Dupuis Concrete take nothing of its cause of action against all of the defendants. Dupuis Concrete raises eight issues in its appeal.

We apply different standards of review to those portions of the motion for summary judgment filed under Rule 166a(c) and those filed pursuant to Rule 166a(i).

To prevail on a traditional summary-judgment motion, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996).

*Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). A Rule 166a(i) summary judgment is analogous to a directed verdict subject on appeal to a legal sufficiency challenge.

In reviewing a no-evidence summary judgment motion, we examine the record in the light most favorable to the non-movant; if the nonmovant presents more than a scintilla of evidence supporting the disputed issue, summary judgment is improper. *King Ranch v. Chapman,* 118 S.W.3d 742, 750 (Tex. 2003)[, *cert. denied,* —— U.S. ——, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004)]; *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002). A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Wal–Mart,* 92 S.W.3d at 506. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch,* 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch,* 118 S.W.3d at 751 (citing *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)).

*Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex.2003).

The appellant's first issue focuses upon the common premise underlying the entire motion for summary judgment, and relates to all of the appellant's claims, whether targeted by traditional or by no-evidence motion for summary judgment. Issue One, "The fact that Mr. Dupuis admitted that he did not read the entire policy is a red herring and the trial court erred when it relied on this deemed admission when granting Penn Mutual, et al's Motion for Summary Judgment," presents the appellant's argument that Dupuis Concrete was unable to assess the

riskiness of the product because the appellees failed to disclose that $72,000 of the $211,000 invested went to the agents' commissions. By failing to disclose the payment of commissions, the appellant argues, the appellees misrepresented its level of risk. It also contends that the policy was so difficult to understand that it did not matter whether Elwood Dupuis read the policy, and the appellees should not be able to escape liability with a warning on the front of the policy. We understand this argument to have two components, a fact-based issue regarding disclosure of commissions, and a policy issue regarding complex insurance contracts.

The commissions at issue were that part of the policy premium that Penn Mutual paid to Lewis and Robertson. Elwood Dupuis testified in a deposition that he knew that he had $3,000,000 in life insurance, but he never knew how much it would cost him, and that he knew the insurance cost something, but never found out how much the agents' commissions were. According to Lewis, $211,000 was the premium paid in the first year of the $3,000,000 life insurance policy. His commission, based on a percentage of the premium, was $36,000. He did not know the amount of Robertson's commission, but he assumed it was similar to his. The first $11,385 was paid to bind the policy in 1999. Of the remaining $200,000, $186,308 was initially invested in the subaccounts. The remaining $13,692 apparently went to fees. A transaction summary reflecting the $186,308 net investment was included in the papers that Dupuis obtained and brought to his accountant, and Dupuis testified that he was aware that $186,308 was invested. Dupuis and his accountant were aware that premiums were charged for the insurance policy. The policy described the premiums, and stated that premiums are payable while the policy is in force until the maturity date. The policy also dis-

closed the maximum monthly cost of insurance rates. The calculation of the policy premium, the calculation of the monthly deduction from the separate account, the cost of insurance, and the obligation to pay the premium in order to keep the policy in force, are explained in the policy. Assuming the appellees failed to disclose that commissions were to be paid out of the premium, the policy itself disclosed the entire premium being paid, as opposed to one or all of its components.

 A party to a contract is obliged to protect itself by reading what it signs and its failure to do so is not excused by mere confidence in the honesty and integrity of the other party. *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex.1962). "In the absence of fraud, one who signs an agreement, without knowledge of its contents, is presumed, to have consented to its terms." *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 908 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied]). "Consequently, a party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the contract or that he did not understand the meaning of the language used." *Id.* Dupuis Concrete argues that the policy is so difficult to understand that the buyer should not be charged with knowledge of its contents. Its supporting authorities for this proposition are articles published in a newspaper and a magazine. These articles discuss the confusing nature of variable life insurance policies. But Dupuis Concrete cites no legal precedent for its proposition. Dupuis Concrete does not argue that the contract is ambiguous. Compare *Barrios v. Enterprise Leasing Co. of Houston*, 110 S.W.3d 185, 191 (Tex.App.-Houston [1st Dist.] 2003, pet. filed) (plurality opinion) (Understanding by consumer that he is undertaking responsibility of replacing sto-

len rental vehicle will not be imputed where contract is ambiguous). Furthermore, a certified public accountant and several lawyers assisted the appellant in the transactions that included the purchase of the policy. Thus, this appeal is distinguishable from cases in which a party has neither knowledge of nor an opportunity to obtain knowledge of a contract's essential terms. Compare *Hidalgo v. Surety Sav. and Loan Ass'n*, 502 S.W.2d 220, 224 (Tex. Civ.App.-El Paso 1973, no writ).

Whether a fact question exists that the contract was procured through fraud precludes summary judgment will be addressed under Issue Three, *infra*. Complexity in and of itself, in the absence of fraud or other tortious conduct, does not excuse a party from reading a contract. Therefore, Dupuis's failure to read the policy need not have been disregarded by the trial court, and the contents of the policy, including the disclosures on the first page, are appropriate summary judgment evidence. Issue One is overruled.

■■■ Issue Two contends that genuine issues of material fact preclude summary judgment on Dupuis Concrete's claim for breach of fiduciary duty. This claim was the subject of both a traditional and a no-evidence motion for summary judgment. A fiduciary duty is an extraordinary duty that is not lightly created. *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). But there is no general fiduciary duty between an insurer and its insured. *Id.* "Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship." *Id.* "To impose an informal fiduciary relationship in a business transaction, the requisite special relationship of trust and con-

fidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.*

■■■ The appellant argues that a special relationship of trust and confidence existed prior to, and apart from, the agreement made the basis of the suit. Specifically, the appellant contends that the appellees engaged in the unauthorized practice of law when Robertson and Lewis gave Elwood Dupuis legal advice and drafted legal documents. The "legal documents" to which the appellant refers are an estate planning portfolio and revocable living trust kit, and the drafting is, according to the brief of the appellant, filling in blanks on forms in a trust kit. Dupuis Concrete refers the court to a document titled "Estate Planning Portfolio and Revocable Living Trust." The only blanks on the document in the record are signature lines and blank property schedules. In his deposition, Lewis testified that the trust was prepared by an Arizona trust company. He denied engaging in the discussions about a trust. The appellant's CPA understood that the trust was prepared by an attorney in New Jersey. The CPA also testified that he met with two local attorneys about the trust, and questions about the trust were directed to a person who was "an attorney at American Trust." Elwood Dupuis's will was drafted by a local attorney, as were other documents associated with estate planning. In our review of the motions and response, we find no summary judgment evidence that Lewis or Robertson drafted legal documents. We also find no evidence in the summary judgment record that Elwood Dupuis or anyone else acting on behalf of the appellant believed that either Lewis or Robertson was a lawyer. Elwood Dupuis testified, "I don't know if [Robertson] told me he was a lawyer or not" and, "I suspected that [Robertson] wasn't a lawyer; but I did not

know he was not a CPA because he told me that most of the CPAs didn't know what the heck they were doing, that he does." The CPA, who had been Dupuis Concrete's accountant for many years and who worked with Elwood Dupuis on the investment in question, testified that Robertson told him that he, Robertson, was neither an attorney nor a CPA. We find no other summary judgment evidence from which it could be inferred that any of the appellees induced the appellant, Dupuis Concrete, to believe that a formal fiduciary relationship existed between the appellant and the appellees. Here, we do not have evidence of even a subjective belief on the part of Elwood Dupuis that Robertson and Lewis were either attorneys or certified public accountants. Not knowing that someone is, in fact, not a lawyer or an accountant is not the same thing as believing that they are. Furthermore, the agents' status was disclosed to the corporation's accountant.

In the response to the motion for summary judgment, Dupuis Concrete argued that a confidential relationship existed between the appellant and the appellees because Lewis attended church with Elwood Dupuis. We also find a reference in Elwood Dupuis's deposition that Robertson "has done some ministering to me," apparently in connection with a social visit at Lewis's home. The appellant presents no case authority for the proposition that praying together creates a confidential relationship to which a fiduciary duty will attach in future business transactions. The facts of this case will not justify declaring such a duty because there is no indication that the pre-existing relationship between Lewis and Elwood Dupuis involved a high degree of trust and confidence over a long period of time. *See Casteel v. Crown Life Ins. Co.,* 3 S.W.3d 582, 590 (Tex.App.-Austin 1997), *rev'd on other grounds,* 22 S.W.3d 378 (Tex.2000)

(mere fact that parties had business relationship for many years insufficient as a matter of law to establish confidential relationship); *see also Insurance Co. of North Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998).

We hold that Dupuis Concrete produced no summary judgment evidence to demonstrate that an informal, confidential relationship existed between the parties that was formed prior to and apart from the insurance contract. The appellees established the absence of a fiduciary relationship and the appellant failed to raise a fact issue on the existence of a fiduciary relationship between the appellant and the appellees. The trial court did not err in granting the appellees' motion for summary judgment as to appellant's claim of breach of fiduciary duty. Issue Two is overruled.

The third issue contends that genuine issues of material fact preclude summary judgment on Dupuis Concrete's claim for fraud. The appellant argues that it is not bound by a contract procured by fraud. The elements of a fraudulent inducement claim are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998). The appellees moved for summary judgment on the ground that the appellant's reliance on the alleged misrepresentations was negated as a matter of law by the language on the first page of the poli-

cy, *supra.* The appellees also argue that reliance is negated by the following policy provision:

> **The Contract**—This policy and the application for it constitute the entire contract. A copy of the application is attached to this policy. Only the President, a Vice President, the Secretary, the Chief Actuary, Actuary or an Associate Actuary may, on behalf of the Company, modify this policy or waive any of its conditions. No agent is authorized to modify this contract or to make any promise as to the future payment of dividends or interest.

As part of the insurance application, Elwood Dupuis signed a document where each of the following had been checked:

> Does the owner understand that:
> - **The death benefit may increase or decrease depending on investment experience?**
> - **The cash value may increase or decrease depending on the investment experience?**
> - **The policy will lapse if the cash surrender value becomes insufficient to cover policy charges?**

In his deposition, Elwood Dupuis testified that he asked if he could lose his money, and Robertson said, "any investment you can lose your money." He did not think that he was getting a guaranteed return, but the only negative he heard was that he could lose all of his money.

Discussing the circumstances surrounding the formation of the contract with Penn Mutual, the appellant identifies several representations in support of its argument that a fact issue precludes summary judgment. Dupuis Concrete contends that Robertson or Lewis made representations regarding the future performance of the investment, including: (1) that the interest on the account would more or less pay for the life insurance; and (2) that the growth rate is normally 24 percent but in a worse case scenario the growth rate would be 12 percent. The appellant also alleges that the parties' fiduciary relationship created a duty to disclose, and that they failed to disclose: (1) that Robertson was not a CPA; (2) that the potential growth rate would be zero; (3) the amount of commission earned by Lewis and Robertson; and (4) how much the insurance coverage would cost. The appellant also asserts that the appellees never showed illustrations with growth rates being 4 to 8 percent.

 Dupuis Concrete argues that the appellees failed to disclose the commission being paid to its agents; however, the entire premium being charged, and its monthly deduction from the separate account, is readily available by reading the policy. The case is thereby distinguishable from *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex.App.-El Paso 1996), *affirmed,* 966 S.W.2d 482, 487 (Tex.1998), a deceptive trade case in which the agent misrepresented the meaning of one of the policy's terms by asserting that the policy's retrospective premiums were subject to a cap. *Garrison* distinguished another deceptive trade case, *Heritage Manor of Blaylock Properties, Inc. v. Petersson,* 677 S.W.2d 689, 691 (Tex.App.-Dallas 1984, writ ref'd n.r.e.), in which unexplained terms were addressed in the policy. Like *Heritage,* the cost to Dupuis Concrete for the insurance was determinable from the policy. The appellant relies on the agents' predictions of the investment's future performance, but to be actionable, a representation regarding future performance must have been made with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion. *See Insurance Co. of North Am. v. Morris,* 981

S.W.2d at 674. Here, Penn Mutual specified that its agents were not authorized to modify the contract or to make any promise as to the future payment of dividends or interest. The summary judgment record contains no evidence that the account actually experienced less growth than claimed by Robertson and Lewis. After the representations were made, the growth rate was lower than anticipated, but there is no evidence in the summary judgment record that the statement was false when made.

The cautionary language in the Penn Mutual policy resembles that found in *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex.1997). In *Schlumberger*, the contract recited that the plaintiffs were not relying on any representations by the defendant. *Id.* at 179. The Supreme Court held that the disclaimer of reliance conclusively negated the element of reliance. *Id.* at 180. As was the case in *Schlumberger*, the representations in this case relate to the precise subject matter that the policy states the agents are not empowered to make. Likewise, *Yzaguirre v. KCS Resources, Inc.*, 47 S.W.3d 532, 542–43 (Tex.App.-Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex.2001), held that the trial court properly granted summary judgment on a fraud claim because a contractual disclaimer of reliance on oral representations precluded a claim premised upon oral representations that varied from the written agreement. The representations relied upon by Dupuis Concrete are either predictions of future performance not shown to be known to be false when made, or alleged failures to disclose information when the summary judgment record establishes the disclosure. As a matter of law, Dupuis Concrete could not rely upon representations that the policy warned were not authorized. We hold the trial court properly granted summary judgment on

the appellant's fraud claim. Issue Three is overruled.

 Issue Four contends the trial court erred in granting summary judgment on the issue of negligent misrepresentation. The elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). The appellees moved for summary judgment on this claim through both Rule 166a(c) and (i). For their traditional motion for summary judgment, the appellees again urged that the appellant's claim is barred as a matter of law because it is complaining about failing to disclose information about the policy that was available by reading the contract. They relied upon *Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 334–35 (Tex.App.-Houston [14th Dist.] 1989, no writ), in which the court affirmed summary judgment for the agent and the insurer, in spite of misleading communication by the agent regarding status of policy, because the insured is charged with knowledge, contained within the policy, that annual premium must be paid in order to prevent policy from lapsing. On appeal, Dupuis Concrete argues that the appellees misrepresented the level of risk involved because they did not disclose that the commission paid to the agents would not be available for investing. However, the policy states the formula for calculating the cost of insurance and the monthly deduction. Therefore, the appel-

lees disclosed that the entire amount of the initial investment would not remain in the investment account. Issue Four is overruled.

Issue Five contends the trial court erred in granting summary judgment because genuine issues of material fact exist on its claim of Insurance Code violations. The appellant argues that the appellees violated Section 4(1) of Article 21.21, which provides that unfair and deceptive practices in the business of insurance include

> Misrepresentations and False Advertising of Policy Contracts. Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statements as to the dividends or share of surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance....

TEX. INS.CODE ANN. art. 21.21, § 4(1) (Vernon Supp.2004).[1]

The appellant argues that the following statements misrepresented the benefits of the insurance product: (1) that the growth

rate is normally 24 percent but in worse case scenario the growth rate would be 12 percent; (2) by only providing illustrations that showed 24 percent growth rate and 12 percent growth rate; and (3) by representing that the policy would have enough growth to cover future premiums. As we have already noted, Elwood Dupuis testified that they discussed projected growth rates of 12 to 24 percent, but there is no summary judgment evidence that the predictions were false when they were made. Nevertheless, the appellees did not file a no-evidence motion for summary judgment on the Insurance Code claim or claim they conclusively established the representations were not false. Instead, they alleged that as a matter of law Dupuis Concrete could not rely on the projections because the policy specifically warned the insured that the policy value is not guaranteed and that the agents were not authorized to make any promise as to future payment of dividends or interest. Again as in *Schlumberger*, the representations in this case relate to the precise guarantees and projections the policy warns its agents are not authorized to make. The appellant was on notice that the policy's accumulation value could decrease based upon investment experience and the risk for the funds is borne by the owner.

A party bringing an action for engaging in an unfair or deceptive insurance practice must show that it relied upon the act to its detriment. *See* TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.2004). In this case, lack of reliance has been established as a matter of law. Issue Five is overruled.

Issue Six contends the trial court erred in granting summary judgment on Dupuis

---

1. Although Article 21.21, § 4 was amended after the inception of the policy, the Legislature did not alter the subsection defining misrepresentations and false advertising of policy contracts. *See* Act of May 17, 1995, 74th Leg. R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988, 2997.

Concrete's claim for violations of the Deceptive Trade Practices Act. The appellant argues that the appellees failed to disclose information concerning goods or services which was known at the time of the transaction and the failure to disclose was intended to induce Dupuis Concrete to enter into a transaction which it would not have entered into had the information been disclosed. TEX. BUS. & COMM.CODE ANN. § 17.46(b)(24) (Vernon Supp.2004). The appellees based their motion for summary judgment on the reliance element of an action for deceptive trade practices. *See* TEX. BUS. & COMM.CODE ANN. § 17.50(a)(1)(B) (Vernon 2002).

▮ The appellant refers to two items in support of its argument that the appellees failed to disclose information concerning goods and services. The first, that the appellees failed to disclose the cost of the policy, we have already determined to have been disproved by the language of the policy itself. The second concerns illustrations that are not contained in the summary judgment record but were discussed in deposition. Lewis testified that he gave Elwood Dupuis and his CPA many illustrations of projected rates of return. One statement on the illustration reads, "I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent has told me they are not guaranteed." Another, to be signed by the agent, states, "I have made no statements that are inconsistent with this illustration—or with the illustration." The illustrations produced at the deposition were not signed. The signature blanks do not raise a fact issue on a Section 17.46(b)(24) violation. Had the illustrations in question been signed, Penn Mutual could have used them to conclusively establish that the information contained in them was provided to the insured. But the lack of a signature, in and of itself, does not raise a fact issue of the opposite proposition that the information was not disclosed. Had appellant alleged that he had not received these illustrations, a different conclusion may have been warranted.

▮ Next, the appellant contends material fact issues concerning unconscionability preclude summary judgment. *See* TEX. BUS. & COMM.CODE ANN. § 17.50(a)(3) (Vernon 2002). " 'Unconscionable action or course of action' means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COMM.CODE ANN. § 17.45(5) (Vernon 2002). In support of its argument that the appellees engaged in unconscionable conduct, the appellant relies upon the fact that Lewis attended the same church as Elwood Dupuis, that Robertson and Lewis obtained his trust by showing him how much money he could save through estate planning, that Elwood Dupuis testified that he did not understand financial information, and that he relied upon Robertson to choose the subaccounts in which to invest. Elwood Dupuis testified that Robertson chose the subaccounts, apparently during a meeting attended by Dupuis and his accountant. The policy stated that the policy value was not guaranteed, that the agents were not authorized to make any promises as to future payments of interest, and that the risk was on the owner. Elwood Dupuis signed an acknowledgment that the death benefit and the value of the policy may increase or decrease depending upon investment experience. The appellant does not explain how the act of selecting accounts was unconscionable.

The summary judgment evidence referred to by the appellant does not raise a

fact issue on its claim for deceptive trade practices. Issue Six is overruled.

■■■■■ Issue Seven contends the trial court erred in granting summary judgment on Dupuis Concrete's cause of action for negligent hiring, supervision, or management. A cause of action for negligent hiring or supervision is a direct tort, as opposed to vicarious liability for the employee's torts. *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 49 (Tex.App.-Fort Worth 2002, no pet.). A claim for negligent hiring, retention, or supervision requires proof that the employer hired an incompetent or unfit employee whom it knew, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *Id.* The elements of the negligence action are a duty, a breach of that duty, and damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

■■■■ The appellees sought summary judgment on this claim under Rule 166a(i) on the elements of duty and proximate cause. The appellant argues that it presented evidence in support of its claims that Penn Mutual, The Fort Worth Agency of Penn Mutual Life Insurance Company, and Hornor, Townsend & Kent, Inc., failed to exercise reasonable care in hiring, supervision, and retaining Robertson and Lewis. Robertson's prior employment terminated for engaging in outside business activities without prior notice to his employer. Dupuis Concrete contends Penn Mutual knew Robertson had surreptitiously sold estate planning documents against the directions of a previous employer, but hired Robertson without prohibiting the sale of estate planning documents. Lewis, the appellant argues, was a pipefitter by trade.[2] It was foreseeable, the appellant argues, that Robertson would use estate planning documents to gain the appellant's trust and that Lewis would not understand the product being sold. It does not identify the danger to the insurance-buying public foreseeable from the conduct in question. Furthermore, the appellant does not address cause in fact. It does not identify the negligent or intentional act committed by Robertson and Lewis, and we have not found a fact issue for any of the claims addressing their conduct. Dupuis Concrete failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the proximate cause element of its cause of action for negligent hiring or supervision. Issue Seven is overruled.

■■■■ Issue Eight challenges the granting of the no-evidence motion for summary judgment on Dupuis Concrete's claim for breach of an implied covenant of good faith and fair dealing. Dupuis Concrete's sole argument in support of its claim is that an informal fiduciary relationship existed between the appellant and the appellees. In Issue Two, we held that Dupuis Concrete produced no summary judgment evidence to demonstrate that an informal, confidential relationship existed between the parties that was formed prior to and apart from the insurance contract. Therefore, the trial court did not err in granting summary judgment on the appellant's cause of action for breach of fiduciary duty. Absent a fact issue on the existence of the requisite fiduciary relationship, the claim for breach of implied covenant also

---

2. Lewis testified that he obtained his insurance license in 1982 and his securities license in 1986 and sold insurance part time while working as a pipefitter. He allowed his licenses to lapse but reactivated them in 1995.

fails. Issue Eight is overruled. The judgment is affirmed.

AFFIRMED.