Kem Thompson Frost, Chief Justice
In this case involving fraud claims by two plaintiffs against their alleged financial *680 advisor, the trial court granted judgment notwithstanding the jury's verdict. In doing so, the trial court disregarded the jury's findings in answer to questions as to liability and actual damages for fraud and negligent misrepresentation, the discovery rule, and exemplary damages. We conclude that the trial court did not err in disregarding the jury's damage finding as to the amount of the defendant's profit from the transaction in question, but that the trial court did err in disregarding all of the other findings, except the negligent-misrepresentation-liability finding, which we need not address. We reverse the trial court's judgment and remand for further proceedings.
I. FACTUAL AND PROCEDURAL BACKGROUND
Appellant/plaintiff Richard Bryan ("Bryan") is the majority owner of appellant/plaintiff The Bryan Group, LLC, a small business that provides sales and marketing services for homebuilders. In the mid-1980s, Bryan started making sporadic and small investments with Tim Couch, whom Bryan considered to be his financial advisor. At some point, Couch went to work at Papalia Financial, a company owned by appellee/defendant Angelo Mark Papalia ("Papalia"). Bryan testified that he transferred a retirement account that he had from a prior employer to Papalia Financial and that Bryan set up a college savings plan for his son through Papalia Financial. When Couch went to work at Papalia Financial, Couch took Bryan's assets with him, and Papalia Financial then began managing Bryan's assets and investments. Couch introduced Bryan to Papalia.
In June 2004, Bryan mentioned to Couch that Bryan wanted to reduce the amount of taxes he was paying during a "good year" in the real estate business. Papalia and Couch met with Bryan. According to Bryan, Papalia and Couch proposed a Welfare Benefit Plan that would use life insurance and that would allow Bryan to invest funds via tax-deductible contributions to the plan. The Bryan Group would make tax-deductible contributions, providing Bryan and his wife with invested funds that would appreciate and that they could access for their retirement, as well as a potential death benefit. Papalia told Bryan that Papalia had sold plans like the proposed one before and that the proposed plan was "a successful tax compliant program." Papalia gave Bryan a long opinion letter from a law firm indicating that the plan complied with then-existing tax laws.
Papalia and Couch showed Bryan a plan reflecting an investment of approximately $132,000 each year for ten years and showing a certain amount of retirement funds that the investment might yield. According to Bryan, based on the cyclical nature of the real estate business, he could not commit to investing $132,000 per year for ten years, and he disclosed these limitations to Papalia. Papalia then asked if Bryan could invest that amount for three years. Though Bryan believed it would be difficult to do, Bryan told Papalia that he would commit to investing $132,000 per year for three years. According to Bryan, Papalia told him that if he could make that investment for three years "this will work." Bryan testified that Papalia did not tell him that the plan would terminate if Bryan made only three annual payments. Bryan thought that if he failed to make a contribution in the fourth year, the plan would continue and Bryan would have the option to make additional contributions in the future. Bryan believed that Papalia was Bryan's financial advisor.
Papalia testified that he recommended this plan to Bryan and that Papalia believed that Bryan could invest $132,000 per *681 year for ten years. Papalia denied telling Bryan that the plan would work if Bryan made only three annual payments.
The Employer Welfare Benefit Plan
After meeting with Papalia several more times and receiving more information from Papalia, on December 31, 2004, Bryan signed an Adoption Agreement on behalf of The Bryan Group, LLC, establishing The Bryan Group, LLC Single Employer Welfare Benefit Plan (the "Plan"). Bryan signed other documents relating to the Plan, either on his own behalf or on behalf of The Bryan Group, LLC.
The Life Insurance Policy
To fund the death benefit under the Plan, Bryan obtained a "Flexible Premium Variable Life Insurance Policy" (the "Policy"). The Policy documents reflect that Papalia acted as the agent for the Policy. Evidence at trial showed that the insurer paid Papalia Securities, Inc. a one-time commission in the amount of $142,781.74 for the Policy. Papalia did not disclose to Bryan and The Bryan Group, LLC (collectively the "Bryan Parties") the amount of the commission the insurer would pay on the Policy.
Plan Contributions and Policy Premium Payments
The Bryan Parties made the anticipated annual contributions under the Plan of approximately $132,000 for tax years 2004, 2005, and 2006. Bryan paid approximately $12,500 of the premium for the Policy each year, and The Bryan Group paid the remainder of the premium. For tax years 2004, 2005, and 2006, The Bryan Group took a tax deduction for the full amount of the insurance premium that it paid for the Policy. According to one of the Bryan Parties' testifying experts, the Bryan Group was not entitled to this deduction. But, the expert testified that the Internal Revenue Service ("IRS") did not challenge these deductions within the applicable limitations period, so the Bryan Parties were able to obtain the benefit of these deductions.
The Bryan Parties' Failure to Make the 2007 Annual Plan Contribution
Bryan sent an email to Papalia on November 20, 2007, informing him that the Bryan Parties would not be able to make the contribution to the Plan for 2007. Bryan noted that the Bryan Parties had made the first three annual contributions as promised but that the Bryan Parties could not make the fourth contribution because of the existing business environment. Papalia testified that the Plan would terminate if the Bryan Parties did not make an annual Plan contribution. If this were so, then the Plan would have terminated based on the Bryan Parties' failure to make the 2007 Plan contribution by year-end 2007.
Termination of the Plan
Before the Plan could terminate based on a failure to make the 2007 annual Plan contribution, Papalia sent the Plan administrator a letter dated December 4, 2007, requesting that the administrator terminate single-employer welfare benefit plans for twenty-three of Papalia's clients, including The Bryan Group, effective December 31, 2006, almost a year earlier. Papalia also requested that the collateral assignment for each of the insurance policies be released as soon as possible. Papalia testified that he sent this letter to the Plan administrator because the IRS recently had issued a notice making the Plan a "listed transaction" going forward and because "[a]t that time none of the employers would want to fund the plan." Papalia sent this letter without discussing with the Bryan Parties whether the Plan should be *682 terminated and without telling them that he was requesting termination of the Plan.
Bryan testified that Bryan did not know that the Plan had terminated, nor did he sign any document requesting or approving the Plan's termination. According to Bryan, Papalia did not tell him that the Plan had terminated until June 2011. Notably, the Plan terminated because of Papalia's termination letter rather than for the Bryan Parties' failure to make the 2007 contribution. Despite the termination of the Plan, the Policy remained in effect.
IRS Action
In October 2010, the IRS notified Bryan and his wife that the IRS had selected their 2007 and 2008 tax returns for examination. (Some refer to this process as an "audit."). In response, the Bryans provided documents and told the IRS that the Plan had not been terminated. Bryan testified that he talked to Papalia after he received the letter from the IRS and that Papalia told him not to be concerned and that the IRS had made a mistake.
The following year, in June 2011, the IRS informed the Bryans that the Plan had been terminated years before, and Papalia told Bryan that the Plan had been terminated in 2007. The IRS eventually sought substantial additional taxes from the Bryan Parties. The Bryan Parties, through retained counsel, resolved the matter for much less than the IRS had sought.
The Bryan Parties' Suit Against Papalia
The Bryan Parties filed suit against Papalia and other defendants asserting claims for common-law fraud, negligent misrepresentation, negligence, breach of fiduciary duty, and alleged violations of the Texas Insurance Code. Before the jury trial in the court below, the trial court dismissed the Bryan Parties' claims against all defendants other than Papalia based on settlements, motions to dismiss, or special appearances. The Bryan Parties' claims against Papalia went to a six-day jury trial.
Directed Verdict on the Bryan Parties' Negligence, Breach-of-Fiduciary-Duty, and Insurance-Code Claims
At the close of the Bryan Parties' case-in-chief, the trial court granted Papalia's motions for a directed verdict as to the Bryan Parties' claims for negligence, breach of fiduciary duty, and alleged violations of the Texas Insurance Code. When granting the motion as to the breach-of-fiduciary-duty claim, the trial court stated that Papalia did not owe the Bryan Parties a formal fiduciary duty and that the evidence in the Bryan Parties' case-in-chief did not raise a fact issue as to whether Papalia owed the Bryan Parties an informal fiduciary duty.
Jury Submission on Fraud and Negligent-Misrepresentation Claims
After Papalia's case-in-chief, the trial court submitted the common-law fraud and negligent-misrepresentation claims to the jury. In submitting the common-law fraud claim, the trial court instructed the jury that it could find fraud based on an affirmative misrepresentation or based on a failure to disclose. At the charge conference, Papalia objected to the instruction allowing the jury to find fraud based on a failure to disclose, arguing that Papalia did not have a duty to disclose. The trial court overruled the objection without stating the basis on which the court concluded that Papalia had a duty to disclose.
Jury's Verdict
In response to ten questions, the jury found as follows:
*683 (1) Papalia committed fraud against the Bryan Parties;
(2) By clear and convincing evidence, the harm to the Bryan Parties resulted from fraud by Papalia;
(3) Papalia made a negligent misrepresentation on which the Bryan Parties justifiably relied;
(4) The negligence, if any, of nine parties other than Papalia did not proximately cause the injury in question;
(5) Papalia's percentage of responsibility is one hundred percent;
(6) In the exercise of reasonable diligence, the Bryan Parties should have discovered Papalia's acts or omissions by June 26, 2011;
(7) Papalia's acts or omissions were not excused;
(8) The amount of Papalia's profit in soliciting the Bryan Parties to participate in the Plan was $142,781.74;
(9) The Bryan Parties sustained $312,028 in past out-of-pocket losses that would fairly and reasonably compensate them for their damages resulting from the fraud or negligent misrepresentation; and
(10) $2.5 million should be assessed against Papalia and awarded to the Bryan Parties as exemplary damages for Papalia's fraud found by the jury by clear and convincing evidence in response to Question 2.
The JNOV Motion and the Trial Court's Judgment
The Bryan Parties moved for judgment based on the jury's verdict and the fraud claim. Papalia filed a motion for judgment notwithstanding the verdict and to disregard jury findings (the "JNOV Motion"), asserting various grounds on which he asked the trial to disregard the jury's answers to Questions 1, 2, 3, 6, 8, 9, and 10. The trial court denied the Bryan Parties' motion, granted Papalia's motion without specifying a ground, and rendered judgment that the Bryan Parties take nothing and that they pay Papalia's court costs.
II. ISSUES AND ANALYSIS
On appeal, the Bryan Parties assert three issues, raising the following points:
(1) The trial court erred in granting the JNOV Motion as to the jury's findings in response to Questions 1, 3, and 6.
(2) The trial court erred in granting the JNOV Motion as to the jury's findings in response to Questions 2 and 10.
(3) The trial court err in granting the JNOV Motion as to the jury's findings in response to Questions 8 and 9.
The JNOV Motion presented multiple grounds, and the trial court did not specify any ground on which it rendered judgment notwithstanding the verdict. Thus, we may affirm the trial court's judgment on any ground or combination of grounds stated in the motion that support the rendition of a judgment that the Bryan Parties take nothing on their claims despite the jury's verdict. See Fort Bend County Drainage Dist. v. Sbrusch , 818 S.W.2d 392, 394 (Tex. 1991). In determining whether the trial court erred in granting the JNOV Motion, we begin with the important principle that we may affirm the trial court's granting of the JNOV Motion only on a ground stated in the written JNOV Motion. See ids="9973411" index="1" url="https://cite.case.law/sw2d/818/392/#p394">id. ; Westergren v. Nat'l Property Holdings, L.P. , 409 S.W.3d 110, 121-22 (Tex. App.-Houston [14th Dist.] 2013), aff'd in part and rev'd in part on other grounds , 453 S.W.3d 419 (Tex. 2015).
*684 A. Did the trial court err in disregarding the jury's finding in response to the fraud question (Question 1)?
1. The Failure to Disclose Commission Information
In response to Question 1, the jury found that Papalia committed fraud against the Bryan Parties based on either a material misrepresentation or a failure to disclose a material fact, as set forth in the trial court's instructions for that question. In Question 1, the trial court did not limit the jury to any particular material misrepresentation or failure to disclose a material fact. On appeal, the Bryan Parties assert various alleged misrepresentations[1] and failures to disclose material facts[2] that they claim show the trial court erred in granting the JNOV Motion as to Question 1. We begin by examining Papalia's failure to disclose the amount of the commission that would be earned on the Policy and that the commission would exceed the Bryan Parties' first-year contribution to the Plan (collectively, the "Commission Information").
Bryan testified that he knew that there would be some commission on the Policy, but that he had no idea that the commission would be as much as $142,000.[3] Bryan said that he never would have invested in the Plan if he had known the commission would be $142,000, which Bryan considered "ridiculous" given that the commission amount exceeded a third of his total investment in the Plan. Bryan stated that the commission was "exorbitant" and took away at least one-third of his total investment that was going toward the retirement plan that he wanted. Evidence *685 showed that the annual contributions to the Plan funded the premium for the Policy. Bryan testified that Papalia did not disclose the commission to Bryan before Bryan invested in the Plan. According to Bryan, he first learned the amount of the commission during discovery in this lawsuit.
2. The Safe Harbor Argument
In the JNOV Motion, Papalia asserted that he had no duty to disclose the commission amount to the Bryan Parties because, as a matter of law, an insurance agent has no duty to disclose the amount of a commission paid by the insurer. Because the insurer under the Policy paid the commission, Papalia asserted, he had no duty to disclose the amount of the commission as a matter of law. To address this argument, we need not determine whether an insurance agent has a general duty to disclose the amount of a commission paid by the insurer, and we presume, without deciding, that an insurance agent has no such general duty. In Papalia's JNOV ground on this point, Papalia does not rely on evidence regarding any fact or circumstance in this case other than evidence that the insurer, rather than the Bryan Parties, paid the commission. Thus, Papalia effectively makes a safe-harbor argument that, as a matter of law, an insurance agent has no duty to disclose the amount of a commission paid by the insurer regardless of any other fact or circumstance that may be present in the case (the "Safe Harbor Argument").
On appeal, the Bryan Parties challenge the trial court's granting of the JNOV Motion, arguing, among other things, that the trial court erred in disregarding the jury's finding that Papalia committed fraud against the Bryan Parties based on Papalia's failure to disclose the Commission Information. In addressing this appellate point, we note that we are obliged to construe appellate briefs reasonably, yet liberally. See Tex. R. App. P. 38.1(f) ; Perry v. Cohen, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam). Though the Bryan Parties' briefing on this argument is deficient, it is not so flawed as to preclude appellate review. See Statewide Hydraulics, Inc. v. EZ Mgmt. GP, LLC, No. 14-13-01049, 2015 WL 167160, at *7 (Tex. App.-Houston [14th Dist.] Jan. 13, 2015, no pet.) (mem. op.); Elaazami v. Lawler Foods, Ltd., No. 14-11-00120-CV, 2012 WL 376687, at *6 (Tex. App.-Houston [14th Dist.] Feb. 7, 2012, no pet.) (noting that appellate courts have discretion to determine whether an issue is waived on appeal due to inadequate briefing). Under a liberal construction of the Bryan Parties' brief, the Bryan Parties have challenged the trial court's granting of the JNOV based on the Safe Harbor Argument. See Ditta v. Conte , 298 S.W.3d 187, 189-90 (Tex. 2009) ; LaChina v. Woodlands Operating Co., L.P. , 417 S.W.3d 516, 529 n.6 (Tex. App.-Houston [14th Dist.] 2013, no pet.). So, we consider whether the trial court erred in granting the JNOV Motion on this ground.
In the JNOV Motion, Papalia cited Texas Insurance Code section 4005.004 in support of the Safe Harbor Argument. See Tex. Ins. Code Ann § 4005.004 (West, Westlaw through 2017 1st C.S.). Subsection (a) of this statute contains various definitions. See id. § 4005.004(a). Under subsection (b), if an agent or an affiliate of an agent receives compensation from a customer for the placement or renewal of an insurance product, other than a service fee described under Insurance Code section 4005.003, an application fee, or an inspection fee, the agent or the affiliate may not accept or receive any compensation from an insurer or other third party for that placement or renewal unless, before the customer's purchase of insurance, the agent has: (1) obtained the customer's documented *686 acknowledgment that the compensation will be received by the agent or affiliate; and (2) provided a description of the method and factors used to compute the compensation to be received from the insurer or other third party for that placement. See id. § 4005.004(b). Subsection (c) states that the statute does not apply to certain persons. See id. § 4005.004(c). Subsection (d) states that an agent may satisfy any requirements imposed by the statute through an affiliate. See id. § 4005.004(d). And, subsection (e) states that the insurance commissioner may adopt rules as necessary to implement the disclosure and acknowledgment-of-disclosure requirements of the statute. See id. § 4005.004(e).
In construing Insurance Code section 4005.004, our objective is to determine and give effect to the legislature's intent. See Nat'l Liab. & Fire Ins. Co. v. Allen , 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the legislature used in the statute and not look to extraneous matters for an intent the statute does not state. Id. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. St. Luke's Episcopal Hosp. v. Agbor , 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the legislature chose. See id. Under section 4005.004 's unambiguous language, the statute does not provide that an insurance agent has no duty to disclose the amount of a commission paid by the insurer regardless of any other fact or circumstance that may be present in the case. See ids="11902537" index="18" url="https://cite.case.law/sw2d/952/503/#p505">id.
In the JNOV Motion, Papalia also cited trial testimony by one of his experts who testified that all fifty states have the same rule: insurance agents are not required to disclose the commission they receive from an insurance company. This ipse dixit of an expert witness as to a legal question, even if undisputed, does not bind the trial court, and the expert's testimony does not compel the conclusion that Papalia owed no duty to disclose the Commission Information. See Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 231-32 (Tex. 2004).
Although some evidence at trial showed that Papalia acted as an insurance agent, other evidence showed that Papalia advised the Bryan Parties as to the advisability of investments, acting in a capacity beyond that of an insurance agent. Furthermore, under this court's precedent, a duty to disclose may arise in the following situations: (1) when the parties have a confidential or fiduciary relationship; (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth; (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak. White v. Pei , 452 S.W.3d 527, 537-38 (Tex. App.-Houston [14th Dist.] 2014, no pet.). Simply because Papalia served as an insurance agent on the Policy does not mean that Papalia cannot have a duty to disclose the amount of a commission paid by the insurer under one of these scenarios. See id. To determine whether Papalia had no duty to disclose the Commission Information would require review of the evidence of the facts and circumstances of the case to see if the case presents any of the situations giving rise to a duty to disclose. See ids="6889580" index="22" url="https://cite.case.law/sw3d/452/527/#p537">id. But, in the grounds in the written JNOV Motion, Papalia did not argue that none of these factual scenarios were present;
*687 instead, he asserted the Safe Harbor Argument. We conclude that the Safe Harbor Argument does not establish that Papalia had no duty to disclose the Commission Information. See ids="6889580" index="23" url="https://cite.case.law/sw3d/452/527/#p537">id. Thus, the trial court erred to the extent the court disregarded the jury's answer to Question 1 based on the Safe Harbor Argument. See id.
3. No Duty Argument Based on Absence of Fiduciary Duty
On appeal, Papalia argues that he would have a duty to disclose the Commission Information only if he owed the Bryan Parties a fiduciary duty and that the Bryan Parties have not challenged the trial court's determination at the directed-verdict stage that Papalia did not owe a fiduciary duty as a matter of law. Because Papalia did not assert this ground in his written JNOV Motion, we may not affirm the granting of the JNOV Motion on this ground. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22. Yet, even if Papalia could raise this argument, we would conclude it lacks merit.
The relationship between an insurance agent and an insured does not give rise to a formal fiduciary duty. Envtl. Procedures, Inc. v. Guidry , 282 S.W.3d 602, 626-628 (Tex. App.-Houston [14th Dist.] 2009, pet. denied). In granting a directed verdict as to the Bryan Parties' breach-of-fiduciary-duty claim, the trial court concluded that Papalia did not owe the Bryan Parties a formal fiduciary duty and that the evidence in the Bryan Parties' case-in-chief did not raise a fact issue as to whether Papalia owed the Bryan Parties an informal fiduciary duty. Presuming that the trial court correctly determined these matters and that the evidence in Papalia's case-in-chief did not raise a genuine fact issue as to whether Papalia owed a fiduciary duty, the absence of a fiduciary duty eliminates only one of the various bases that may give rise to a duty to disclose. See White , 452 S.W.3d at 537-38. So, even if we could affirm the trial court's judgment on this ground, we would conclude that the argument does not provide a basis for the trial court to have disregarded the jury's answer to Question 1. See id.
4. No Duty Argument Based on Disclosure of the Premium Amount
On appeal, Papalia also argues that if an insured is informed of the entire amount of the premiums charged, the insurer or agent owes no duty to disclose the nature or amount of the commissions that are being paid out of the premium. The only case Papalia cites in support of this proposition is a case from Texas's Ninth Court of Appeals. See E.R. Dupuis Concrete Co. v. Penn Mutual Life Ins. Co. , 137 S.W.3d 311, 320 (Tex. App.-Beaumont 2004, no pet.). Because Papalia did not assert this ground in his written JNOV Motion, we may not affirm the granting of the JNOV Motion on this ground. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22. Still, even if we could entertain this argument, we would conclude that it lacks merit.
In E.R. Dupuis Concrete Co. , the plaintiff complained that the insurer and insurance agents failed to disclose the commission being paid to the agents. See E.R. Dupuis Concrete Co. , 137 S.W.3d at 320. The E.R. Dupuis court noted that the premium amount charged was disclosed in the policy itself, and the court used this fact to distinguish an opinion from a sister court of appeals. See ids="9238780" index="34" url="https://cite.case.law/sw3d/137/311/#p320">id. The E.R. Dupuis court did not state that if an insured is informed of the entire amount of the premiums charged, the insurer or agent owes no duty to disclose the nature or amount of the commissions that are being paid out of the premium. See id. at 320-21. The E.R. Dupuis court concluded that the representations *688 upon which the plaintiff relied were either (1) predictions of future performance not proven to have been known to be false when made, or (2) alleged failures to disclose information when the summary-judgment record established the disclosure. See ids="9238780" index="36" url="https://cite.case.law/sw3d/137/311/#p320">id. at 321.
We have addressed all possible grounds in the JNOV Motion that challenge the trial court's determination at the charge conference that Papalia owed a duty to disclose, and we have concluded that none provides a proper basis for disregarding the jury's finding in response to Question 1, without having to address whether the trial court correctly determined that Papalia had a duty to disclose. Therefore, we need not and do not decide whether Papalia had a duty to disclose. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
5. A Potential Scienter Argument
In part of the JNOV Motion, Papalia asserted that there was no evidence showing that Papalia had fraudulent scienter based on trial evidence regarding Papalia's alleged due diligence as to the Plan. In this ground, Papalia did not attack the jury's fraud finding to the extent it was based on a failure to disclose the Commission Information. On appeal, Papalia does not argue that this ground provides a basis for affirming the trial court's disregarding of the jury's finding in answer to Question 1 to the extent the jury based the finding on a failure to disclose the Commission Information.
Even presuming for the sake of argument that Papalia challenged the failure to disclose the Commission Information in this ground, the ground would not provide a basis for affirming the trial court's ruling. Though Papalia objected to the failure-to-disclose instruction in Question 1 on the ground that Papalia did not have a duty to disclose, Papalia did not challenge the form of this instruction or the failure-to-disclose elements the trial court submitted to the jury. Thus, if we were to measure the sufficiency of the evidence to support the jury's finding of fraud based on a failure to disclose, we would do so using the failure-to-disclose elements submitted in the charge. See Osterberg v. Peca , 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc. , 201 S.W.3d 272, 283-86 (Tex. App.-Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards). The only challenge to a failure-to-disclose finding arguably asserted in this ground is that no trial evidence establishes the Papalia "acted intentionally in concealing a fact." But, under the charge submitted, the jury was not required to find this element before the jury could find fraud based on a failure to disclose. So, even if there were no evidence that Papalia acted intentionally in concealing a fact, this lack of evidence would not be a proper basis for the trial court to have disregarded the jury's answer to Question 1. See Osterberg , 12 S.W.3d at 55 ; Hirschfeld Steel Co. , 201 S.W.3d at 283-86. Thus, the scienter ground in the JNOV Motion does not provide a basis for affirming the trial court's granting of the JNOV Motion as to the failure to disclose the Commission Information. See Osterberg , 12 S.W.3d at 55 ;
*689 Hirschfeld Steel Co. , 201 S.W.3d at 283-86.[4]
6. No Proper Basis to Disregard the Answer to Question 1 Based on Failure to Disclose Commission Information
Having addressed all grounds in the written JNOV Motion that might provide a basis for the trial court to have disregarded the affirmative answer to Question 1 based on Papalia's failure to disclose the Commission Information, we conclude that none of these grounds provide a proper basis for the trial court to have disregarded this answer. The remaining grounds do not address the fraud claim against Papalia based on a failure to disclose the Commission Information. Therefore, none of the grounds in the JNOV Motion provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 1, and the trial court erred in granting the JNOV Motion as to this finding. We sustain the first issue to the extent it addresses this finding.[5] See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
7. No Proper Basis to Disregard the Answer to Question 1 Based on the Failure to Disclose Termination Information
In the alternative, none of the grounds in the written JNOV Motion provide a proper basis for the trial court to have disregarded the affirmative answer to Question 1 based on Papalia's failure to disclose that he requested the Plan administrator to terminate the Plan effective December 31, 2006, and that the administrator terminated the Plan (the "Failure to Disclose Termination Information"). Trial evidence showed that before the Plan could terminate based on a failure to make the 2007 annual Plan contribution, Papalia sent the Plan administrator a letter dated December 4, 2007, requesting that the administrator terminate the Plan effective December 31, 2006, almost a year earlier. Papalia also requested that the collateral assignment for each of the insurance policies be released as soon as possible.
Papalia testified that he sent the December 4, 2007 letter to the Plan administrator because the IRS recently had issued a notice making the Plan a "listed transaction" going forward and because "[a]t that time none of the employers would want to fund the plan." Papalia sent this letter without discussing with the Bryan Parties whether the Plan should be terminated and without telling them that he was requesting the termination of the Plan. Papalia testified that he did not tell Bryan that there was an issue with terminating the Plan and with the IRS notice making the Plan a "listed transaction" because Papalia did not think there was an issue with the Plan's termination. Papalia explained that he understood that the IRS notice was "backward looking" and did not affect "any plans that were not funding for 2007." According to Papalia, he understood that the Plan was a "listed transaction" if the Plan funded in 2007 or in a subsequent year, but that the IRS notice did not affect "anything prior to that." Trial evidence *690 showed that Papalia failed to disclose to the Bryan Parties that he had requested the Plan administrator to terminate the Plan effective December 31, 2006. Papalia did not disclose to the Bryan Parties that the administrator had terminated the Plan at any time close to the termination of the Plan. Bryan testified that he did not learn the Plan had been terminated until June 2011, when the IRS informed Bryan that the Plan had been terminated in 2007, and Papalia confirmed this termination in response to an email from Bryan.
In the JNOV Motion, Papalia listed and challenged twenty misrepresentations or failures to disclose that the Bryan Parties had alleged in their petition (the "Twenty Acts or Omissions"). Papalia did not include among them the Failure to Disclose Termination Information. In the JNOV Motion, Papalia argued that the Twenty Acts or Omissions are not actionable, but Papalia did not argue that the Failure to Disclose Termination Information was not actionable. In the JNOV Motion, Papalia did not purport to challenge all misrepresentations or failures to disclose as to which the trial evidence raised a fact issue. Nor did Papalia assert in the JNOV Motion that any alleged misrepresentation or failure to disclose under Question 1 would not allow the Bryan Parties to recover because, as a matter of law, the damages found in response to Question 9 did not result from that conduct. We may affirm the trial court's granting of the JNOV Motion only on a ground stated in the written JNOV Motion. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
In part of the JNOV Motion, Papalia asserted that there was no evidence showing that Papalia had fraudulent scienter based on trial evidence as to Papalia's alleged due diligence vis-à-vis the Plan. In this ground, Papalia did not attack the jury's fraud finding to the extent it was based on the Failure to Disclose Termination Information. On appeal, Papalia does not argue that this ground provides a basis for affirming the trial court's disregarding of the jury's finding in answer to Question 1 to the extent the jury based the finding on the Failure to Disclose Termination Information. Even presuming for the sake of argument that Papalia challenged this alleged failure to disclose in this ground, the ground would not provide a basis for affirming the trial court's ruling. Though Papalia objected to the failure-to-disclose instruction in Question 1 on the ground that Papalia did not have a duty to disclose, Papalia did not challenge the form of this instruction or the failure-to-disclose elements the trial court submitted to the jury. Thus, if we were to measure the sufficiency of the evidence to support the jury's finding of fraud based on a failure to disclose, we would do so using the failure-to-disclose elements submitted in the charge. See Osterberg , 12 S.W.3d at 55 ; Hirschfeld Steel Co. , 201 S.W.3d at 283-86. The only challenge to a failure-to-disclose finding arguably asserted in this ground is that no trial evidence establishes the Papalia "acted intentionally in concealing a fact." But, under the charge submitted, the jury was not required to find this element before the jury could find fraud based on a failure to disclose. So, even if there were no evidence that Papalia acted intentionally in concealing a fact, this lack of evidence would not be a proper basis for the trial court to have disregarded the jury's answer to Question 1. See Osterberg , 12 S.W.3d at 55 ; Hirschfeld Steel Co. , 201 S.W.3d at 283-86. Thus, the scienter ground in the JNOV Motion does not provide a basis for affirming the trial court's granting of the JNOV Motion as to the Failure to Disclose Termination Information. See Osterberg , 12 S.W.3d at 55 ; Hirschfeld Steel Co. , 201 S.W.3d at 283-86.
*691 In the JNOV Motion, Papalia challenged the element of reliance or justifiable reliance based on several grounds, but these grounds do not challenge the Failure to Disclose Termination Information, and so do not provide a proper basis for the trial court to have disregarded a finding by the jury in response to Question 1 that Papalia committed fraud against the Bryan Parties based on the Failure to Disclose Termination Information. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
On appeal, Papalia responds to the Bryan Parties' argument as to the Failure to Disclose Termination Information by asserting that the Bryan Parties were told that the Plan would terminate if they stopped making "premium payments." But, we cannot affirm the granting of the JNOV Motion on this basis because this ground is not contained in the written JNOV Motion. (Papalia asked that the Plan be terminated effective December 31, 2006, a year before the Bryan Parties' failure to make the 2007 contribution.) See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22. Papalia argues on appeal that his failure to disclose that he requested termination of the Plan cannot constitute fraud, as defined in Question 1, because the nondisclosure occurred in 2007, after the Bryan Parties already had invested in the Plan and after the Bryan Parties had made their last contribution to the Plan, and therefore the Bryan Parties cannot possibly have suffered "injury as a result of acting without knowledge of the undisclosed fact" as required by Question 1. We cannot affirm the granting of the JNOV Motion on this basis because the written JNOV Motion does not contain this ground. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
In addition, this argument fails under the plain language of the jury charge. Papalia is correct that the failure to disclose occurred after the Bryan Parties had invested in the Plan and after they made their last Plan contribution. Papalia also is correct that as to a failure to disclose a material fact, Question 1 requires that the Bryan Parties suffered injury as a result of acting without knowledge of the undisclosed fact. But, Papalia erroneously presumes that Question 1 requires that the injury the Bryan Parties suffered result from Papalia's investing in the Plan or making a Plan contribution. Nothing in the language of the jury charge imposes this requirement as to Question 1. The language Papalia cites requires only that the Bryan Parties have suffered injury as a result of acting without knowledge of the undisclosed fact, for example, that Papalia had requested the Plan administrator to terminate the Plan effective December 31, 2006 or that the administrator had terminated the Plan.[6] See Osterberg , 12 S.W.3d at 55 ; Hirschfeld Steel Co. , 201 S.W.3d at 283-86. So, Papalia's argument lacks merit.
On appeal, the Bryan Parties argue that the trial court erred in disregarding the jury's finding in response to Question 1 because, in the JNOV Motion, Papalia did not challenge each factual basis on which the jury could have found that Papalia committed fraud. The Bryan Parties also assert that the trial court erred in disregarding the jury's finding in response to Question 1 based on the Failure to Disclose Termination Information. Because Papalia did not challenge these failures to *692 disclose in the JNOV Motion, none of the grounds in that motion provide a proper basis for the trial court to have disregarded the affirmative answer to Question 1 based on the Failure to Disclose Termination Information. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22. Therefore, even if the trial court did not err in disregarding the jury's finding in response to Question 1 based on Papalia's failure to disclose the Commission Information, the trial court erred in granting the JNOV Motion as to this finding based on the Failure to Disclose Termination Information. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
B. Did the trial court err in disregarding the jury's finding in response to the predicate question for exemplary damages (Question 2)?
In response to Question 2, the jury unanimously found by clear and convincing evidence that the Bryan Parties suffered harm as a result of fraud by Papalia. The instructions in Question 2 were the same as in Question 1, except that the trial court (1) instructed the jury to answer Question 2 only if the jury unanimously answered "yes" to Question 1 for Papalia, (2) instructed the jury to answer "yes" to Question 2 only if the answer was unanimous, to answer "no" if ten or more jurors voted for that answer, and not to answer the question if neither of the foregoing occurred, and (3) defined the term "clear and convincing evidence."
In the JNOV Motion, Papalia incorporated by reference all of the grounds he had asserted for disregarding the answer to Question 1 as grounds for disregarding the answer to Question 2. In the previous section, we concluded that none of these grounds provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 1. For the same reasons, none of these grounds provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 2.
Papalia also asserted in the JNOV Motion that the trial court should disregard the answer to Question 2 because (1) only ten jurors agreed to that answer and signed the original verdict certificate; and (2) the amended verdict certificate showing that the jury's answers to Questions 1 and 2 were unanimous was not made pursuant to written instructions from the trial court as required by Texas Rule of Civil Procedure 295.
When the jury originally returned its verdict, the verdict form showed that the jury had answered "yes" as to Question 1 for Papalia[7] and "yes" as to Question 2. The trial court had instructed the jury that it could answer "yes" to Question 2 only if all jurors agreed on that answer and only if all jurors had agreed to answer "yes" in Question 1 as to Papalia. Despite this instruction, the jury's verdict certificate originally showed that only ten jurors had agreed to all of the jury's answers so only ten had agreed to answer Question 1 "yes" for Papalia and to answer Question 2 "yes," but, in light of the trial court's instructions in Question 2, the jury's affirmative answer to Question 2 indicated that the jury had answered these two questions unanimously. After discussing this situation with counsel and polling the jury, the trial court explained to the jury in open court and on the record that the verdict form contained an ambiguity because the jury was instructed to answer "yes" to Question 2 only if all jurors agreed to that answer, but the jurors indicated in the verdict certificate that only ten jurors *693 agreed to this answer. The trial court then directed the jury to return to the jury room and clarify on the verdict certificate whether the answer to Question 2 was unanimous. The trial court did not give the jury written instructions. The jury later returned with an amended verdict certificate indicating that the answers to the first two questions were unanimous and that ten jurors agreed to the answers to Questions 3 through 9.[8]
Under Texas Rule of Civil Procedure 295, entitled "Correction of Verdict," if the jury's verdict is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations. Tex. R. Civ. P. 295. Papalia argued in the JNOV Motion that the trial court should disregard the answer to Question 2 because only ten jurors agreed to that answer and signed the original verdict certificate. Though it is true that only ten jurors signed the original verdict certificate, after the jury returned to the jury room, the jury amended the verdict certificate to show that all jurors agreed to the answers to the first two questions. In this context, the original verdict certificate does not provide a basis for disregarding the jury's answer to Question 2. See ids="7086941" index="67" url="https://cite.case.law/sw3d/409/110/#p121">id.
Papalia also complains that the trial court failed to adhere to Rule 295 's requirement that the court give the jury written instructions. Papalia did not voice this objection before the trial court discharged the jury. We conclude that Papalia waived this complaint by failing to make a timely objection. See Lundy v. Masson , 260 S.W.3d 482, 495 (Tex. App.-Houston [14th Dist.] 2008, pet. denied). Even if Papalia had timely objected and even if the trial court erred in failing to give the jury written instructions, that error would not be a proper basis for the trial court to have disregarded the jury's answer to Question 2. See Ross v. Texas Emp'rs Ins. Ass'n , 153 Tex. 276, 267 S.W.2d 541, 542-43 (Tex. 1954) ; Newsom v. Moertle , 557 S.W.2d 841, 842-43 (Tex. Civ. App.-Waco 1977, writ dism'd).
Having addressed all grounds in the written JNOV Motion that might provide a basis for the trial court to have disregarded an affirmative answer to Question 2 based on Papalia's failure to disclose the Commission Information or based on the Failure to Disclose Termination Information, we conclude that none of these grounds provide a proper basis for the trial court to have disregarded this answer. The remaining grounds do not address the fraud claim against Papalia based on a failure to disclose the Commission Information or based on the Failure to Disclose Termination Information. Therefore, none of the grounds in the JNOV Motion provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 2, and the trial court erred in granting the JNOV Motion as to this finding. We sustain the second issue to the extent it addresses this finding.[9] See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
*694 C. Did the trial court err in disregarding the jury's finding in response to the discovery-rule question (Question 6)?
In response to Question 6, the jury found that in the exercise of reasonable diligence, the Bryan Parties should have discovered Papalia's acts or omissions by June 26, 2011. In the JNOV Motion, Papalia asserted that the trial court should disregard the jury's finding in response to Question 6 because the discovery rule does not apply to the Bryan Parties' claims as a matter of law under three cases- Mauskar , Khoei , and Prieto .[10] See Mauskar v. Hardgrove , No. 14-02-00756-CV, 2003 WL 21403464, at *3-4 (Tex. App.-Houston [14th Dist.] June 19, 2003, no pet.) (mem. op.); Khoei v. Stonebridge Life Ins. Co. , No. H-13-2181, 2014 WL 585399, at *6-7 (S.D. Tex. Feb. 14, 2014) ; Prieto v. John Hancock Mut. Life Ins. Co. , 132 F.Supp.2d 506, 513-15 (N.D. Tex. 2001).
In Mauskar , an insured under three insurance policies asserted fraud and other tort claims against insurance agents who sold the policies, alleging that the agents misrepresented to the insured that the policies would pay two to three times their face value when the insured reached age 65 and also complained that the agents did not explain to the insured that the policies would not provide this type of payoff. See Mauskar , 2003 WL 21403464, at *1, *4. The Mauskar court concluded that the discovery rule did not apply to these claims as a matter of law because courts deem insureds to know the terms and conditions of their insurance policies and because the terms of the policies showed that each respective policy did not provide the payoff that the insured wanted, contrary to the defendants' alleged representations. See id. at *3-4. In today's case, nowhere in the Policy, the related Policy documents, the Plan, or the related Plan documents is there a statement of the Commission Information, a statement that Papalia had requested termination of the Plan, or a statement that the administrator had terminated the Plan.
The Khoei court applied Mauskar to claims that an insurer misrepresented the scope of coverage under the policy and concluded that the discovery rule would not suspend the running of the statute of limitations because the insurance certificate given to the insured when the policy issued contained an unambiguous and accurate description of the policy coverage. See Khoei , 2014 WL 585399, at *6-7.
The Prieto case involved claims by an insured based on alleged fraudulent misrepresentations inconsistent with the terms of the insurance policy. See Prieto , 132 F.Supp.2d at 514. The parts of the Prieto opinion Papalia cited in the JNOV Motion described the Prieto court's serious *695 doubts as to whether the claims met the "inherently undiscoverable" requirement for the discovery rule to apply. See ids="11119004" index="80" url="https://cite.case.law/f-supp-2d/132/506/#p513">id. After describing these doubts, the Prieto court did not base its ruling on the "inherently undiscoverable" requirement; instead, the Prieto court based its ruling on the "objectively verifiable" requirement. See ids="11119004" index="81" url="https://cite.case.law/f-supp-2d/132/506/#p513">id. at 513-15.
As to the fraud claim against Papalia based on his failure to disclose the Commission Information or based on the Failure to Disclose Termination Information, the Mauskar , Khoei , and Prieto cases are not on point and none of these cases support the proposition that the discovery rule does not apply to this claim as a matter of law. See Envtl. Procedures, Inc. , 282 S.W.3d at 625-626 ; Mauskar , 2003 WL 21403464, at *3-4 ; Khoei , 2014 WL 585399, at *6-7 ; Prieto , 132 F.Supp.2d at 513-15.
Having addressed all grounds in the written JNOV Motion that might provide a basis for the trial court to disregard the answer to Question 6 as to a fraud claim based on Papalia's failure to disclose the Commission Information or based on the Failure to Disclose Termination Information, we conclude that none of these grounds provide a proper basis for the trial court to have disregarded this answer. Because none of the grounds in the JNOV Motion provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 6, the trial court erred in granting the JNOV Motion as to this finding. We sustain the first issue to the extent it addresses this finding. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
D. Did the trial court err in disregarding the jury's finding in response to the disgorgement question (Question 8)?
In response to Question 8, the jury found that $142,781.74 was the amount of Papalia's profit in soliciting the Bryan Parties to participate in the Plan. In the JNOV Motion, Papalia asserted that the evidence is legally insufficient to show that Papalia, in his individual capacity, received any profit in soliciting the Bryan Parties to participate in the Plan because the insurer paid the commission on the Policy to Papalia Securities, Inc.
If a trial court disregards a jury finding because the trial evidence is legally insufficient to support that finding, we review the trial court's ruling under the same standard that applies to summary judgments. See City of Keller v. Wilson , 168 S.W.3d 802, 823 (Tex. 2005). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. Id. We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. See ids="8943104" index="90" url="https://cite.case.law/sw3d/168/802/#p823">id. at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. See ids="8943104" index="91" url="https://cite.case.law/sw3d/168/802/#p823">id.
The Bryan Parties and Papalia all agree that the insurer on the Policy paid a commission of $142,781.74, the amount found by the jury in response to Question 8. The purpose of this question was to obtain a jury finding on an amount of Papalia's profits to be used in calculating the amount of the Bryan Parties' equitable-disgorgement remedy against Papalia. The Bryan Parties argued to the jury that it should answer "$142,781.74" to this question, and the jury did so.
Papalia testified that the insurer paid the entire $142,781.74 commission to Papalia Securities, Inc., a "Subchapter S" corporation *696 in which Papalia was a ninety-five percent owner. The trial evidence contained an exhibit from an account of Papalia Securities, Inc. reflecting a deposit of $142,781.74 into the account from the insurer under the Policy. Papalia testified that he would pay income tax on the profits of Papalia Securities, Inc. According to Papalia, he could not receive a direct commission on the Policy because it was a variable insurance contract, and under "FINRA" rules a direct commission on that type of policy can be paid only to a broker-dealer. Papalia testified that the insurer paid the commission on the Policy to Papalia Securities, a broker-dealer. Papalia stated that there is no document showing that he is the recipient of the commission.
On appeal, the Bryan Parties assert that the insurer paid part of the commission to Papalia Securities and part of it to Papalia in his individual capacity, without specifying how much commission the insurer paid to each. The Bryan Parties seem to suggest that determining any amount of the commission that the insurer paid to Papalia Securities is irrelevant, because the profits from Papalia Securities, a Subchapter S corporation, flowed to Papalia as owner of the corporation. But, a Subchapter S corporation is a separate legal entity, and the corporation owns its earnings, rather than the corporation's owner, notwithstanding the tax treatment of the corporation's earnings. See Singh v. Duane Morris, LLP , 338 S.W.3d 176, 181-82 (Tex. App.-Houston [14th Dist.] 2011, pet. denied).
The Bryan Parties' expert witness testified that her understanding is that Papalia made a commission on the sale of the Plan. She based this understanding on reading deposition testimony and on her review of documents from the insurer under the Policy, which, according to the expert, showed that Papalia Securities received some of the commission and that Papalia received some of the commission. The expert did not specify the documents to which she referred. The Bryan Parties have not cited them on appeal, and these documents do not appear to have been admitted into evidence at trial.
We presume for the sake of argument that the jury discredited the exhibit and testimony showing that Papalia Securities received all of the commission. Even under this presumption, considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the trial evidence would not enable reasonable and fair-minded people to find that Papalia in his individual capacity received any amount of money as profit in soliciting the Bryan Parties to participate in the Plan. See City of Keller v. Wilson , 168 S.W.3d at 819. Because the evidence is legally insufficient to support the jury's finding in response to Question 8, the trial court did not err in granting the JNOV Motion as to the jury's finding in response to Question 8. We thus overrule the third issue to the extent it addresses this finding.
E. Did the trial court err in disregarding the jury's finding in response to the actual-damages question (Question 9)?
In response to Question 9, the jury found that the Bryan Parties sustained $312,028 in past out-of-pocket losses that would fairly and reasonably compensate them for their damages resulting from the fraud or negligent misrepresentation. In the charge, the trial court instructed the jury that "out of pocket losses"
*697 means "the difference, if any, between the value of the Plan received and the price the [Bryan Parties] paid for it." In the JNOV Motion, Papalia asserted that the trial court should disregard the jury's finding in response to Question 9 because the jury did not take into account the value of the life insurance that the Bryan Parties obtained under the Policy. The Bryan Parties requested out-of-pocket damages of $508, 002.54 based on the testimony of their damage expert. Papalia's damage expert testified that the total value of the life insurance that the Bryan Parties obtained was $335,216 and that this amount should be deducted in calculating the out-of-pocket damages. According to Papalia, it is clear that the jury did not deduct $335,216 in calculating out-of-pocket damages and therefore the trial court did not err in disregarding the jury's finding in response to Question 9.
The jury was not required to credit the testimony of Papalia's damage expert, and the trial evidence did not conclusively prove that the value of the insurance received was $335,216. The Bryan Parties' expert discussed an IRS document admitted into evidence in which the IRS stated the annual cost of term life-insurance coverage in the face amount of the Policy was $12,541. If the jury used this cost amount to calculate the value of the life insurance obtained by the Bryan Parties, then the jury could have deducted the cost of the life insurance and still found that the Bryan Parties sustained $312,028 in past out-of-pocket losses that would fairly and reasonably compensate them for their damages resulting from the fraud or negligent misrepresentation. So, even presuming that the jury did not deduct $335,216 as the total value of the life insurance that the Bryan Parties obtained, the failure to deduct this amount does not mandate the conclusion that the trial court should disregard the jury's finding in response to Question 9. See City of Keller , 168 S.W.3d at 827.
Because the only ground Papalia asserted in the JNOV Motion against the finding in response to Question 9 does not provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 9, the trial court erred in granting the JNOV Motion as to this finding. We sustain the third issue to the extent it addresses this finding. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
F. Did the trial court err in disregarding the jury's finding in response to the exemplary-damages question (Question 10)?
In response to Question 10, the jury found that $2.5 million should be assessed against Papalia as exemplary damages for the conduct found in response to Question 2. In the JNOV Motion, Papalia asserted that the trial court should disregard this finding because (1) the finding in response to Question 2 should be disregarded, and (2) the jury's assessment of exemplary damages exceeds the limits imposed by the United States and Texas constitutions.
The first ground does not provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 10 because we already have concluded that none of the grounds in the JNOV Motion provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 2, and that the trial court erred in granting the JNOV Motion as to this finding.
As to the second ground, Papalia incorporated by reference into the JNOV Motion the arguments and authorities regarding *698 the constitutional limits on a jury's assessment of exemplary damages contained in Papalia's response in opposition to the Bryan Parties' motion for entry of judgment. Papalia argued that the jury's assessment of exemplary damages is unconstitutionally excessive under the legal standard articulated in Bennett v. Reynolds . See 315 S.W.3d 867, 873-74 (Tex. 2010). Presuming, without deciding, that the jury's assessment of exemplary damages is unconstitutionally excessive, the remedy for this excessiveness is to lower the amount of exemplary damages awarded in the judgment to a constitutionally permissible amount; the remedy is not to disregard the jury's finding of exemplary damages and render judgment that the Bryan Parties take nothing on their request for exemplary damages. See id. at 873, 880, 882-83 (stating that "a 'grossly excessive' award [of exemplary damages] offends due process" and that the remedy for the grossly excessive award in that case was for the court of appeals to suggest a remittitur); Tony Gullo Motors I, L.P. v. Chapa , 212 S.W.3d 299, 307, 310 (Tex. 2006) (stating that though state law governs the amount properly awarded as exemplary damages, this amount is still subject to "an ultimate federal constitutional check for exorbitancy" and concluding the remedy for the constitutionally excessive award of exemplary damages was for the court of appeals to suggest a remittitur) (internal quotations omitted).
Because none of the grounds in the JNOV Motion provide a proper basis for the trial court to have disregarded the jury's finding in response to Question 10, the trial court erred in granting the JNOV Motion as to this finding. We sustain the second issue to the extent it addresses this finding. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.
G. Does Papalia's cross-point bring forward any issue that would have vitiated the jury's verdict or that would have prevented an affirmance of the judgment on the verdict?
In a cross-point, Papalia asserts various arguments that he raised in the trial court in his objections and response to the Bryan Parties' motion for entry of judgment, such as (1) Paplia's alleged entitlement to a settlement credit; (2) the statutory cap on exemplary damages under Civil Practice and Remedies Code section 41.008, (3) whether the exemplary damages award is constitutionally excessive warranting reduction; and (4) whether the Bryan Parties are entitled to prejudgment interest. Under Texas Rule of Appellate Procedure 38.2(b), even if the trial court erred in granting the JNOV Motion, this court nonetheless may affirm the trial court's judgment that the Bryan Parties take nothing if Papalia brings forward by cross-point one or more issues that would have vitiated the jury's verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict. See Tex. R. App. P. 38.2(b) ; Triyar v. Fireman's Fund Ins. Co. , 515 S.W.3d 517, 521-22, 530 (Tex. App.-Houston [14th Dist.] 2017, pet. filed). Yet, none of the issues Papalia raises in his cross-point would have vitiated the jury's verdict or prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict; instead, the issues Papalia urges in the cross-point go to judgment formation when rendering judgment on the verdict. Therefore, these issues do not provide a proper basis for affirming the trial court's take-nothing judgment based on a cross-point, although Papalia is free to raise these issues in the trial court on remand. Tex. R. App. P. 38.2(b) ; Triyar , 515 S.W.3d at 521-22, 530. We overrule Papalia's cross-point.
*699 [11]
III. CONCLUSION
None of the grounds Papalia asserted in the JNOV Motion provide a proper basis for the trial court to have disregarded the jury's findings in response to Questions 1, 2, 6, 9, and 10. Because the evidence is legally insufficient to support the jury's finding in response to Question 8, the trial court did not err in granting the JNOV Motion as to this finding, and we overrule the third issue to the extent it challenges the trial court's ruling as to this finding. We sustain the third issue as to the jury's finding in response to Question 9. Because the Bryan Parties sought rendition of judgment only on their fraud claim, we need not and do not address the first issue to the extent the Bryan Parties assert that the trial court erred in disregarding the jury's negligent-misrepresentation finding in response to Question 3. We sustain the remainder of the first issue as well as the second issue. Because the trial court erred in granting the JNOV Motion as to Questions 1, 2, 6, 9, and 10 and in rendering judgment that the Bryan Parties take nothing, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion, including proceedings to determine the judgment that should be rendered on the Bryan Parties' fraud claim based on the jury's findings, other than the finding in response to Question 8.

On appeal the Bryan Parties assert that the trial court erred in granting the JNOV Motion as to the following alleged misrepresentations: (1) Papalia misrepresented that there was a guaranteed 6% rate of return; (2) Papalia misrepresented that the use of a variable life insurance policy or a cash value policy was appropriate when used in conjunction with the Plan; (3) Papalia misrepresented that the Bryan Parties could exit the Plan after "so many years" or could access their investment by policy loans that would not have to be paid back until the death benefit was paid; (4) Papalia misrepresented that the Bryan Parties could take a deduction equal to the full amount of their contributions to the Plan; (5) Papalia misrepresented the Bryan Parties' ability to terminate the Plan; (6) Papalia misrepresented the tax consequences of the Plan; (7) Papalia misrepresented that the Plan was a "safe investment"; and (8) Papalia misrepresented that Congress and the IRS had authorized the Plan.

On appeal the Bryan Parties assert that the trial court erred in granting the JNOV Motion as to the following alleged failures to disclose material facts: (1) Papalia's failure to disclose the amount of the commission that would be earned on the Policy and that the commission would be greater than the Bryan Parties' contribution to the Plan in the first year; (2) Papalia's failure to disclose that the Bryan Parties' investment in the defective Plan would virtually guarantee that the Bryan Parties would be audited by the IRS, that they would incur substantial expenses in defending the audit, and that they would lose the audit and have to pay taxes on the sums invested, interest, and penalties; (3) Papalia's failure to disclose that the IRS perceived these types of plans as abusive tax shelters that did not comply with Internal Revenue Code sections 162, 404, or 419(e) and that the IRS was not going to allow a deduction for contributions into these types of plans; (4) Papalia's failure to disclose that the Bryan Parties, in all reasonable likelihood, would never achieve the economic results as represented during the sale; (5) Papalia's failure to disclose that, in 2007, Papalia had directed the Plan administrator to terminate the Plan; and (6) Papalia's failure to disclose that the Plan administrator terminated the Plan, did not notify the Bryan Parties of the termination, and did not obtain the Bryan Parties' signature on the appropriate documents.

Bryan was referring to an approximate amount for the commission. Undisputed trial evidence showed that the exact amount of the commission was $142,781.74.

In the JNOV Motion, Papalia challenges the element of reliance or justifiable reliance based on several grounds, but these grounds do not challenge the alleged failure to disclose the Commission Information, and so do not provide a proper basis for the trial court to disregard a finding by the jury in response to Question 1 that Papalia committed fraud against the Bryan Parties based on a failure to disclose the Commission Information. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.

In reaching this conclusion, we have not had to determine whether the evidence is legally sufficient to support the failure-to-disclose elements in the instruction for Question 1. Thus, we need not and do not decide this issue. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.

As noted above, Papalia did not assert in the JNOV Motion that any alleged misrepresentation or failure to disclose under Question 1 would not allow the Bryan Parties to recover because, as a matter of law, the damages found in response to Question 9 did not result from that conduct.

Other people were listed in Question 1, and the jury answered "no" as to the others.

The jury later answered Question 10, following a bifurcated trial on the amount of exemplary damages that should be assessed against Papalia.

In reaching this conclusion, we have not had to determine whether the evidence is legally sufficient to support the failure-to-disclose elements in the instruction for Question 2. Thus, we need not and do not decide this issue. See Sbrusch , 818 S.W.2d at 394 ; Westergren , 409 S.W.3d at 121-22.

In the JNOV Motion, Papalia asserted grounds challenging the jury's findings in response to Questions 6, 9 and 10. In his appellate brief Papalia says that he does not seek to uphold the trial court's granting of the JNOV Motion based on any of these grounds. As appellee, Papalia does not have the burden of showing that the trial court's ruling should be upheld. On appeal, the Bryan Parties argue that the trial court erred in granting the JNOV Motion, and Papalia argues that the trial court did not err and that this court should affirm the trial court's judgment. Though Papalia does not rely on some of the JNOV grounds on appeal, the trial court granted the JNOV Motion based on these grounds, and this court must determine whether the trial court erred in granting the motion. Notwithstanding Papalia's decision not to urge these grounds on appeal, we will address these grounds to determine whether the trial court erred in granting the JNOV Motion based on these grounds. See Aaronii v. Directory Distributing Assocs. , 462 S.W.3d 190, 202 n. 10 (Tex. App.-Houston [14th Dist.] 2015, pet. denied) ; Flowers v. Flowers , 407 S.W.3d 452, 457 n.2 (Tex. App.-Houston [14th Dist.] 2013, no pet.).

Because the Bryan Parties sought rendition of judgment only on their fraud claim, the issue as to whether the trial court erred in disregarding the jury's negligent-misrepresentation finding in response to Question 3 is moot. See Powell v. CIT Bank, N.A. , No. 14-15-00949-CV, 2017 WL 4228893, at *5-6 (Tex. App.-Houston [14th Dist.] June 8, 2017, no pet.) (regular op.). Therefore, we need not address the first issue to the extent the Bryan Parties assert that the trial court erred in disregarding the jury's finding in response to Question 3.